**Lawrence Akin JACKSON, Appellant,**

v.

**Fred R. DICKSON, Warden, San Quentin Prison, Appellee.**

**No. 18970.**

United States Court of Appeals
Ninth Circuit.

Dec. 30, 1963.

Allan Brotsky, San Francisco, Cal., and Henry M. Elson, Berkeley, Cal., for appellant.

Stanley Mosk, Atty. Gen., for the State of Cal.; Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before BARNES, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Jackson appeals from the denial of his petition for a writ of habeas corpus. He is under sentence of death imposed by the Superior Court of the State of California, County of Riverside, for the commission of a rape-murder. His conviction was affirmed by the Supreme Court of California in People v. Jackson, 59 Cal.2d 375, 379 P.2d 937, 29 Cal.Rptr. 505. The essential allegation of his petition is as follows:

> "Petitioner is now, and was at the time of the commission of the aforesaid rape-murder, a mentally abnormal sex offender as defined by the legislature of the State of California,[1] in that he was and now is a person who, by an habitual course of misconduct in sexual matters, has

evidenced an utter lack of power to control his sexual impulses, and who, as a result, has attacked, and inflicted death and injury upon the objects of his uncontrolled and uncontrollable desires.

---

1. Cal.Welf. & Inst.Code § 5600, ff. By its own terms, this law is not applicable to one against whom a criminal charge is pending. (§ 5607). It applies to one "who is not mentally ill or mentally defective." (§ 5600).

"The conduct of petitioner in raping and killing the said Doris Keyes was uncontrollable and non-volitional. According to competent medical opinion, the uncontrollable and non-volitional character of the conduct of petitioner in raping and killing the said Doris Keyes was due to brain damage.

"By virtue of the foregoing, the imposition of the death penalty upon petitioner would constitute as to him cruel and unusual punishment, in violation of the guarantees accorded him by Articles 8 and 14 of the Constitution of the United States."

The trial court denied the petition without holding a factual hearing, and therefore we assume that the foregoing allegations, so far as they state facts, are true. The state, however, does not admit their truth.

In his briefs and oral argument before this court, Jackson makes two contentions: (1) that the carrying out of the sentence of death would deprive him of due process of law and (2) that it would amount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. He seeks a permanent stay of the death penalty, not release from prison.

■ It is conceded that, at the time of the commission of the offense, Jackson was legally sane, within the meaning of the so-called M'Naghten Rule, which is in effect in the State of California. Indeed, following the verdict of the jury which found him guilty, Jackson withdrew his plea of not guilty by reason of insanity. In essence, his contention is that a criminal is deprived of due process of law when he is sentenced to death if his criminal act was the result of uncontrollable impulse, even though he knew the nature and character of his act and knew that it was wrong for him to do what he did. Such a contention flies squarely in the face of the decision in Leland v. Oregon, 1951, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. There the Supreme Court said:

"Much we have said applies also to appellant's contention that due process is violated by the Oregon statute providing that a 'morbid propensity to commit prohibited acts, existing in the mind of a person, who is not shown to have been incapable of knowing the wrongfulness of such acts, forms no defense to a prosecution therefor.' That statute amounts to no more than a legislative adoption of the 'right and wrong' test of legal insanity in preference to the 'irresistible impulse' test. Knowledge of right and wrong is the exclusive test of criminal responsibility in a majority of American jurisdictions. The science of psychiatry has made tremendous strides since that test was laid down in M'Naghten's Case, but the progress of science has not reached a point where its learning would compel us to require the states to eliminate the right and wrong test from their criminal law. Moreover, choice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility. This whole problem has evoked wide disagreement among those who have studied it. In these circumstances it is clear that adoption of the irresistible impulse test is not 'implicit in the concept of ordered liberty.'" (Id. 343 U.S. at 800-801, 72 S.Ct. at 1008, 96 L.Ed. 1302)

If this decision is to be overruled, it is for the Supreme Court, not this court,

to overrule it. It follows from the foregoing that the State of California has not deprived Jackson of due process by holding him legally responsible for the murder that he admittedly committed.

Jackson says that, while due process may permit the state to retain the M'Naghten Rule as a test of criminal responsibility, it forbids the imposition of the death penalty when conviction is based upon that test. We are unable to follow this reasoning. In Leland, the Supreme Court had before it a death penalty case, and that fact was not held to affect the result, which turned upon due process. We think that, if anything in the Constitution forbids the penalty, it must be the Eighth Amendment.

Does the imposition of the death penalty under these circumstances constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments? Jackson asserts that it does. His primary reliance is on Robinson v. California, 1961, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. The precise holding in that case is that it is cruel and unusual to impose *any* punishment merely because a person is suffering from an illness "which may be contracted innocently or involuntarily" (370 U.S. p. 667, 82 S.Ct. p. 1420, 8 L.Ed.2d 758). The decision could as well be said to rest upon grounds of substantive due process as upon the Eighth Amendment. The State of California did not sentence Jackson to death because he was mentally ill. It sentenced him for murder.

Another case cited, Weems v. United States, 1910, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, held that a sentence by a Philippine Court, consisting of fifteen years of Cadena (hard and painful labor, in irons) plus permanent loss of certain civil rights and permanent subjection to surveillance, for what would be but a petty offense in this country, is cruel and unusual punishment. Thus the court can look at the severity of the punishment in relation to the offense. In Trop v. Dulles, 1958, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630, four justices were of the opinion that denationalization is cruel

and unusual punishment for desertion from the armed forces, because it "subjects the individual to a fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment." (356 U.S. p. 99, 78 S.Ct. p. 597, 2 L.Ed. 2d 630) Justice Brennan's concurrence was on due process grounds, and four justices dissented. These cases are a far cry from the imposition of the death penalty for a rape-murder.

A long series of decisions of the Supreme Court has held or stated that the death penalty, as such, is neither cruel nor unusual. (See Wilkerson v. Utah, 1878, 99 U.S. 130, 25 L.Ed. 345; In re Kemmler, 1890, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519; Weems v. United States, supra, 217 U.S. at 371, 30 S.Ct. at 550, 54 L.Ed. 793; Francis v. Resweber, 1947, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422; Trop v. Dulles, supra; compare Williams v. New York, 1949, 337 U.S. 241, 251, 69 S.Ct. 1079, 93 L.Ed. 1337.) Traditionally, the death penalty has been deemed an appropriate punishment for murder. In Trop v. Dulles, supra, the Court said: "Whatever the arguments may be against capital punishment, both on moral grounds and in terms of accomplishing the purposes of punishment—and they are forceful—the death penalty has been employed throughout our history, and, in a day when it is still widely accepted, it cannot be said to violate the constitutional concept of cruelty." (356 U.S. p. 99, 78 S.Ct. p. 597, 2 L.Ed.2d 630)

Here there is no suggestion, as there was in certain of the cases above cited, that the method of administering the penalty is cruel or unusual. The contention is only that the penalty itself is of that character. This contention, in the light of the foregoing authorities, we must reject. Jackson's arguments, which attack the penalty as incompatible with modern concepts of justice, would more properly be addressed to the California legislature. It is not for us to write our personal views on the matter, whatever they may be, into the Constitution. We hold that if the state

**576**

is free to find Jackson guilty of murder in the first degree, as Leland makes clear that it was in this case, it does not violate the Eighth Amendment, made applicable to it by the Fourteenth Amendment, by imposing the death penalty upon him.

Affirmed. The stay of execution heretofore granted shall terminate ten days from the date of the filing of this opinion.