166 So.2d 131 (1964)
Wilbert LEE, Alias Slingshot Lee, Appellant,
v.
STATE of Florida, Appellee.
Freddie L. PITTS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 32981, 33022.
Supreme Court of Florida.
May 29, 1964.
Rehearing Denied July 2, 1964.
W. Fred Turner, Lynn Haven, for appellants.
James W. Kynes, Atty. Gen., and A.G. Spicola, Jr., Asst. Atty. Gen., for appellee.
THOMAS, Justice.
The above causes reached this court by separate appeals which were consolidated for disposition. The appellants had been *132 jointly indicted for the murder in the first degree of each of two victims.
When arraigned both appellants pleaded guilty of the charge, in one indictment, that they "unlawfully and from a premeditated design to effect the death of Jessie L. Burkett" shot him with a gun and in identical language, in the second indictment, that they killed Grover Floyd, Jr.
Upon return of the indictments by the grand jury the court appointed counsel for the appellants.
When pleas of guilty were entered by both appellants to both indictments they were adjudged guilty of murder in the first degree in each instance and a date was set for the imposition of sentence.
At the culmination of the hearing we will presently describe, the circuit judge sentenced the appellants to death in the electric chair. The circuit judge directed the attorney originally appointed for appellants to bring the appeals as it was proper for him to do under Sec. 909.21, Florida Statutes, F.S.A., since, evidently, the attorney had not been relieved of that duty making it incumbent on the judge to appoint a successor for the purpose.
Two points are stressed here to support the contention of appellants that the case should be remanded to the trial judge so that he alone might "hear the question of mercy and impose the proper sentence." The first of these constitutes a challenge of the judge's action in determining in the manner he adopted whether the appellants should be granted mercy reducing the penalty to life imprisonment or be executed in expiation of their crime.
At the outset of discussion of the first question we refer to Sec. 909.10, Florida Statutes, F.S.A., which the circuit judge evidently applied when the appellants entered their pleas of guilty, without specifying the degree of the offense to which they were pleading guilty, for he considered their pleas as ones to the highest crime, namely, murder in the first degree. This was obviously his attitude because in each case he immediately adjudged the defendant guilty of the highest degree of the crime charged. But at the outset of arraignment of the defendants he had explained to them that a plea of guilty could result in a sentence of death by electrocution.
As we have written, in each order adjudicating guilt was imbedded a provision that a hearing would be conducted later, on 28 August 1963, to determine the punishment which would be inflicted.
The judge seems then to have turned to Sec. 909.12, Florida Statutes, F.S.A., containing the provision that when a judge accepts a plea to an indictment, as undoubtedly he did in the instant cases, and "has discretion as to the punishment for the offense," he may hear witnesses to set the penalty to be imposed. At this point a plea of guilty of murder in the first degree had been received by the court but the exact nature of the penalty had not been fixed inasmuch as the appellants could be sentenced to death or, if found by the judge, there being no jury, "to be entitled to a recommendation to mercy, [could] be sentenced to imprisonment for life, at the discretion of the court." Sec. 919.23(2), Florida Statutes, F.S.A. (Italics supplied.)
With the stage set for the final act in the trial, the receipt of testimony of the homicide and the determination of the punishment to be inflicted at the discretion of the judge, he introduced unusual, and, so far as we know unprecedented, procedure when he empanelled a jury of 12 men to render a verdict on the lone question whether or not mercy should be recommended reducing the penalty from death to life imprisonment.
Four verdicts were returned by the jury all signed by the same person as foreman and relating to the murder of each victim by each defendant, all bearing the recital: "We find the defendant is not entitled to a recommendation of mercy by a majority of our number."
*133 Under the law the responsibility for determining whether each defendant should atone for his double crime by forfeiting his life or spending the rest of it in prison was strictly the judge's and there was no power vested in him to delegate that burden to a jury. It would have been more consonant with established legal procedure for him to have rejected the pleas, caused pleas of not guilty to be entered and proceeded to try fully the cases. It is indicated in the acts that refusal of a guilty plea may be proper since there is reference to what may be done "if" the court accepts pleas of guilty. But it does not follow that there was actual delegation of responsibility by the judge or any attempt to shirk it. The record does not reveal why he pursued the course and we would only be guessing were we to undertake to explain it. The fact remains that after the testimony of the witnesses had been heard the judge decided independently, though his conclusion may have been strengthened by the verdicts, that no mercy should be shown, when he recited in his judgment, after referring to the verdicts, "and the Court having determined that you are not so entitled [to a recommendation of mercy] it is the judgment of the Court and the sentence of the law that you" be executed.
Although we do not encourage the procedure followed by the trial judge, we do not find such an abandonment by him of his power and duty as would warrant a conclusion that reversible error as distinguished from irregularity transpired.
The appellants accosted the two men named in the indictment at a filling station. One of them was struck on the head by a revolver and the other was forced to tie the then wounded and bleeding man's hands behind him. After robbing the place, the appellants put the two men from the service station in the front seat of the car in which the appellants and a woman companion had driven to the station. One of the appellants got under the wheel while the other sat in the back seat with the woman and held the pistol to the head of one of the passengers on the front seat.
The car was driven 12 miles to a lonely, wooded spot and when it stopped, the appellant who had been riding in the back seat holding the pistol, armed his accomplice with a car jack. The appellants then marched their two captives into the woods near a canal leaving the woman in the car. She testified that soon after they left she heard two shots and, following a short interval, two more. The appellants returned to the car and they, with the woman, drove away.
A graphic description of the whole incident from the time the automobile started to the filling station until the victims had been left in the woods and the party had dispersed was given by the woman who was riding in the back seat, all the time badly frightened, but apparently taking no part in the escapade.
When the abductors and their prisoners reached the spot where the latter were murdered one of the men was still bound and it was only after he had been shot that his hands were freed. As the murder was about to take place the younger man, the one bound, begged the abductors to release the older man because he had a family, but his entreaties were ignored as the appellants were bent on their murderous design.
The bodies were left where they fell and were discovered several days after by a passerby on his way to the canal to fish.
We must answer the appellants' second question in the negative too. The deed of the appellants was foul in the extreme. They had robbed the service station and in their flight carried two men with them, one of whom had been struck a severe blow. They drove a considerable distance, one of the captives bound, the other held at gun point. At a secluded spot the younger, larger man was savagely struck with the jack, then both were shot in the head and left to die, or decay.
Surely it would be difficult to conceive of a more heinous crime.
*134 We have carefully reviewed the evidence as we are obligated to do pursuant to Sec. 924.32(2), Florida Statutes, F.S.A., and have not found that the interests of justice require a new trial.
The judgment is affirmed.
DREW, C.J., and ROBERTS, THORNAL, O'CONNELL, CALDWELL and HOBSON (Ret.), JJ., concur.