441 P.2d 778

**The STATE of Arizona, Appellee,**
**v.**
**Donald Melvin BOGGS, Appellant.**
**No. 1692.**

Supreme Court of Arizona,
In Banc.
May 23, 1968.

Darrell F. Smith, Atty. Gen., LeRoy R. Park, Asst. Atty. Gen., for appellee.

J. Thomas Brooks, Flagstaff, for appellant.

McFARLAND, Chief Justice.

Appellant-defendant, Donald Melvin Boggs, plead guilty to two counts of first-degree murder in the Superior Court, Coconino County, and appealed from the imposition of sentence which was based on a jury verdict fixing the penalty at death.

On September 6, 1965, the Arizona Highway Patrol reported that the dead bodies of two Caucasian males had been found.

about seven miles East of Ashfork, Arizona. Each man's hands had been tied behind his back with cord; one of them had been beaten about the head and face with a blunt object and shot two times; the other one had been shot four times. All identification had been removed from them. The deceased were later identified as Halvar Johnson and Robert Willis from New Hampshire. In Flagstaff, a few days later, defendant Boggs and a young female companion were apprehended and arrested for the Ashfork killings.

Charges of murder were first filed against defendant by complaint and information. Defense counsel was appointed for Boggs, then because of objection of counsel to this procedure the charges were submitted to a grand jury, which returned an indictment against Boggs on two counts of murder of the first degree. On October 8, 1965, at his arraignment, defendant entered pleas of not guilty to both counts contained in the indictment. On October 11, 1965, at the request of defendant's counsel, the court ordered a mental examination pursuant to Rule 250, Rules of Crim.Proc., 17 A.R.S., and appointed two psychiatrists to conduct the examination.

On December 22, 1965, there was a hearing on re-arraignment on the indictment.

"Did you have something you wished to present to the Court at this time?

"MR. BROOKS: Yes, your Honor, I do.

"From the first moment that I met with Don Boggs several weeks ago after my appointment to represent him, he has been frank and honest with me concerning his involvement in the crimes of which he is charged before this court.

"I understand that he has been cooperative since the day of his arrest. It was at my direction that a plea of not guilty was entered so that I might have an opportunity to fully investigate the circumstances surrounding this particular case.

"During my investigation, your Honor, certain circumstances, certain facts concerning the case and concerning the defendant's development, his childhood, his personality, his present mental state, came to my attention. Certain facts and circumstances which would well have a bearing in this particular case, certainly, at least as to penalty—facts which I have felt, your Honor, then and feel now should be brought to the attention and determination of a jury.

"Now our rules of procedure, of course, do not specifically provide for a jury trial strictly on the issue of punishment in matters such as these, but I don't feel that under our law in this state that such a procedure would be precluded. I don't believe that this has ever been done in the State of Arizona, but I think it could be done.

"I took the liberty of discussing this matter with the County Attorney and he advised me that he would not have any objection to a jury trial solely on the issue of punishment in cases such as this, and I also understand that the Court would have no objection to such a procedure.

"I want to assure the Court that I have discussed the case with Don on many many different occasions. He is entirely familiar with the nature of the charges which have been filed against him and the penalty that could be assessed. He is aware of his alternatives in this particular case, but, your Honor, at this time, the defendant would request that he be allowed to withdraw his plea of not guilty heretofore entered and in entering a new plea, I would strongly urge that the matter continue to a trial before a jury on January 17th as scheduled solely for the purpose of determining the issue of punishment in this case.

"THE COURT: Do you have any objection to the withdrawal of the plea, Mr. Smith?

"MR. SMITH: Your Honor, I'm not sure that I'm straight on the procedure here, but I believe there is a pending matter before the Court on Rule 250. I don't have any quarrel with what Mr. Brooks

has said except possibly to have this ruling under the hearing of 250 decided first.

"THE COURT: I will take that up in a moment. We can discuss this—

"MR. SMITH: I certainly at the appropriate time will stipulate that the plea of guilty be entered and that the punishment be tried before the jury.

"THE COURT: The only thing before the Court before we can enter such a plea is the motion to withdraw the guilty plea heretofore entered.

"Do you have any objection?

"MR. SMITH: I have no objection.

"THE COURT: The motion to withdraw the plea of not guilty heretofore entered is granted by the Court.

&ast; &ast; &ast; &ast; &ast; &ast;

"THE COURT: Very well. On the record then, I will make the finding that the defendant is capable of assisting counsel in his own defense and also that he understands the proceedings against him, and this order is based upon the reports of Doctor Otto Bendheim and Doctor Maier Tuchler which were submitted in writing to the Court.

"We will at this time then have a rearraignment on the charges if this is agreeable, Mr. Brooks.

"Will you have the defendant stand before the bench, please?

"Because of the charges involved, Mr. Brooks, I would like to have the charges again read to the defendant by the Clerk.

"MR. BROOKS: Yes, your Honor.

"THE COURT: Would you read the indictment, please?

"(Whereupon, the indictment was read by the Clerk.)

"THE COURT: Prior to the entry of the pleas on Count I and Count II, Mr. Brooks, I would like to ask the defendant some questions.

"MR. BROOKS: Yes, your Honor.

"THE COURT: Mr. Boggs, the purpose of reading these charges to you is for you to enter a plea of guilty or not guilty to each of the two counts.

"DEFENDANT BOGGS: Yes, sir.

"THE COURT: You understand this. I would like for you to understand as well—and I'm sure that your attorney has fully advised you, but I would like to have your full understanding in open court—that if you enter a plea of guilty to either one of the two counts, the law places only two alternatives on sentence. One is life imprisonment in the Arizona State Prison at Florence. The other is death in the gas chamber at the Arizona State Prison at Florence. There is no other alternative.

"Do you understand that these are the only two possible sentences that can be imposed by this Court or by a jury?

"DEFENDANT BOGGS: Yes, sir, I do.

"THE COURT: I will ask you then what is your plea to the charge specified in Count I as to murder in the first degree of Robert D. Willis, guilty or not guilty?

"DEFENDANT BOGGS: Guilty, your Honor.

"THE COURT: As to Count II, what is your plea—

"DEFENDANT BOGGS: Guilty, your Honor.

"THE COURT: —to the charge of murder in the first degree as to Halvar Johnson?

"DEFENDANT BOGGS: Guilty.

"THE COURT: And you concur in the entry of a plea of guilty as to each of the two charges, Mr. Brooks?

"MR. BROOKS: Yes, your Honor.

"THE COURT: Let the record note the entry of a plea of guilty to Count I—guilty to Count II, and it is my understanding that you request that the sentence to be imposed on the guilty plea be referred to a jury of twelve men and women, is this correct?

"MR. BROOKS: Yes, sir.

"THE COURT: And do you have any objection? Do you stipulate that this be done, Mr. Smith?

"MR. SMITH: So stipulated, you Honor.

"THE COURT: I would like to state on the record as Mr. Brooks noted that such a request was made to me before by Mr. Brooks and I have, because the procedure is not specifically provided for in our rules, contacted various judges throughout the State of Arizona and they have concurred that such a procedure is permissible in their opinion and I would like to state my approval of the request. I feel that such a decision should be made by twelve competent jurors. I will therefore approve the request, the stipulation of the County Attorney and it is ordered that the request of punishment alone shall be submitted to a jury to be convened January 17th, 1:30 in the afternoon as heretofore ordered."

While discussion between counsel and the court in chambers is not reported, the substance of it was set forth by the court, which is to the effect that defendant on the advice of his attorney changed his plea of "not guilty" to "guilty." The discussion also indicates that it was done with the expectation but without an agreement with the court to submit the matter of his sentence to a jury trial, as counsel specifically made the latter request in open court, after the plea of guilty. The court fully advised defendant in regard to his rights, and that on entering a plea of guilty to either of the two counts "the law places only two alternatives on sentence." These are life imprisonment or death in the gas chamber. And in reply to this defendant stated that he understood that these were the only two possible sentences that could be imposed. After that the court ordered that the issues of punishment alone be submitted to the jury. A jury was duly empaneled, and, after the introduction of evidence, returned a unanimous verdict fixing the punishment at death. The court formally sentenced defendant based on the jury determination, and set the date of execution. Defendant then perfected this appeal.

Seeking to be re-sentenced, defendant raises five separate points in which he alleges the lower court erred in regard to assessment of the death penalty. The first of these assignments of error involved the admissibility of evidence, and the next two were in regard to instructions to the jury. Consideration of these questions requires that we determine whether the procedure followed was in accordance with the statutes governing sentences where a plea of guilty is entered. In Jasper v. Batt, 76 Ariz. 328, 332, 264 P.2d 409, 411, we held:

"It is elementary that the parties cannot by stipulation or otherwise create jurisdiction and thereby confer upon the court a power not given by law. *The source of the power of the court is the constitution and statutes and it cannot be increased nor altered by consent or agreement.* * * *" (Emphasis added.]

See also Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491. We have also held that although parties to an action may stipulate respecting facts they cannot properly stipulate what the law is that is to govern their case; the courts should not regard those stipulations when they are made, as it is the duty of the court to decide the applicable law. State Consolidated Publishing Co. v. Hill, 39 Ariz. 163, 4 P.2d 668; Graves v. Alsap, 1 Ariz. 274, 25 P. 836. The power of public officers and procedure of the court are to be found in the statutes and rules of this Court, and may not be conferred by stipulation or otherwise. The procedure for fixing sentence for murder in the first degree is specifically set forth by statute, 5 A.R.S.:

"§ 13–453. Punishment for murder

"A. A person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the person charged therewith, *or upon a plea of guilty, the court shall determine the punishment.*

\* \* \* \* \* \*

"§ 13–1642. Duty of court as to punishment

"A. The several sections of the Revised Statutes which declare certain crimes to be punishable as therein mentioned *devolve a duty upon the court authorized to pass sentence to determine and impose the punishment prescribed.*

"B. When the punishment for a crime is left undetermined between certain limits, *the punishment shall be determined by the court authorized to pass sentence,* within such limits." [Emphasis added.]

 The language of those statutes is definite. It is clear that there exists a mandatory duty upon the judge to determine the punishment of a defendant who has plead guilty to a first-degree-murder charge. No other conclusion can be drawn therefrom. The statutes expressly provide that the jury shall determine the penalty upon a jury trial on the issue of guilt, but that the court shall determine the punishment upon a plea of guilty. This Court has promulgated the following rules of procedure for determination of sentence by the court after a plea of guilty:

"Rule 186. Plea of guilty of offense divided into degrees; determination of degree

"*If the defendant pleads guilty* as provided in Rule 185, *the court shall,* before accepting the plea, examine defendant and witnesses, if necessary, to determine the degree of the offense of which the defendant is guilty and *render judgment and sentence accordingly.* [Emphasis added.]

"Rule 187. Determination of punishment upon plea of guilty

"When the defendant pleads guilty to an indictment or information, if the court accepts the plea and has discretion as to the punishment for the offense, it may hear witnesses to determine what punishment shall be imposed.

\* \* \* \* \* \*

"Rule 336. Inquiry into mitigating or aggravating circumstances

"When the court has discretion as to the penalty to be inflicted on the defendant, it shall, upon suggestion of either party that there are circumstances which may properly be taken into consideration, hear evidence as to the circumstances summarily in open court, either immediately or at a special time and upon such notice to the adverse party as the court directs, or the court may inquire into such circumstances of its own motion."

Arizona has no provision for a penalty-jury trial in cases such as the instant one, nor do we have rules concerning the procedural standards and admissibility of evidence for this particular purpose. Furthermore, for this Court to approve of the penalty-trial procedure in this case would be in direct conflict with legislative fiat. Addressing itself to the issue of punishment, this Court, in Shaughnessy v. State, 43 Ariz. 445, 32 P.2d 337, said:

"\* \* \* The determination of the punishment when an accused pleads guilty of first degree murder is committed by the Legislature of this state to the trial court, and to that court only, \* \* \*."

Arizona has had many cases where the court determined the punishment on a plea of guilty to a charge of first-degree murder. State v. Janovic, 101 Ariz. 203, 417 P.2d 527; State v. Kruchten, 101 Ariz. 186, 417 P.2d 510; State v. Alford, 98 Ariz. 124, 402 P.2d 551; State v. Jones, 95 Ariz. 4, 385 P.2d 1019; State v. Fenton, 86 Ariz. 111, 341 P.2d 237.

Other states, such as California, have passed statutes which provide for penalty-jury trials, but Arizona has not. Arizona's controlling statute on this subject, A.R.S. § 13–453, was adopted from a similar California statute before California enacted its new statute which changed its procedure to allow for penalty trials, or the fixing of the punishment at the discretion of the jury, even after a plea of guilty has been

accepted. California's old procedure is set forth in West's Annotated Penal Code, Section 190, and read as follows:

"§ 190. Murder; punishment; discretion of jury; applicability to existing sentences; minors under 18

"Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; or, upon the plea of guilty, the court shall determine the same; * * *. (Enacted 1872. As amended Code Am. 1873–74, c. 508, p. 457, § 1; Stats.1921, c. 105, p. 98, § 1; Stats.1927, c. 889, p. 1952, § 1.)"

The Supreme Court of California, in the case of People v. Hough, 26 Cal.2d 618, 160 P.2d 549, passed on the validity of Section 190 of the California Penal Code as it read then, and held that where defendant elected to plead guilty to a charge he was not deprived of his right to trial by jury under the state constitution when the court fixed the penalty at death pursuant to Section 190 which authorized the court upon a plea of guilty to fix the penalty. The California high court said:

"* * * Authorities from other jurisdictions, cited by defendant in support of his claim that, despite his pleas of guilty, he was entitled to have a jury determine the penalty, have no relevancy here. They involved statutes unlike our own in that they expressly conferred upon the jury the right to fix the punishment on a plea of guilty. * * *"

The State of Oklahoma has a statute, 21 O.S.1961, Sec. 707, similar to Arizona's, which reads:

"§ 707 Punishment of murder—Discretion of jury—Verdict—Plea of Guilty— "Every person convicted of murder shall suffer death, or imprisonment at hard labor in the State penitentiary for life, at the discretion of the jury. * * * But upon a plea of guilty the court shall determine the same." [R.L. 1010, Sec. 2319]

The Criminal Court of Appeals of Oklahoma, in several cases, has held the above statutes to be constitutional, and that on a plea of guilty in a capital case the court shall pronounce judgment and sentence and there is no issue to be submitted to a jury. Opinion of the Judges, In re Gould, 87 Okl. Cr. 297, 197 P.2d 629; Martin v. State, 54 Okl.Cr. 336, 20 P.2d 196; In re Watkins, 21 Okl.Cr. 95, 205 P. 191; In re Opinion of the Judges, 18 Okl.Cr. 598, 197 P. 546. In In re Gould, supra, the court, in its syllabus, stated:

"Penal Code (Tit. 21 O.S.1941 § 707) providing that upon a plea of guilty of murder the court shall determine whether the defendant shall be punished by death or by imprisonment for life at hard labor is constitutional and valid, and where a defendant who has been informed against for a capital crime in court of competent jurisdiction pleads guilty, such court is authorized to pronounce judgment and sentence against such defendant according to law. In such a case there is no issue to be submitted to a jury."

See also Oklahoma Supreme Court decision in State v. Johnson, 21 Okl. 40, 96 P. 26, 22 L.R.A.,N.S., 463.

Under Florida statutes having similar effect to Arizona's statutes the Supreme Court of Florida has announced its general rule with regard to the fixing of punishment upon entry of a plea of guilty to a capital offense. In Chatman v. State, Fla., 199 So.2d 475, 476, the Florida court stated:

"We think that in accordance with our decision in Lee et al. v. State, 166 So. 2d 131, once the plea of guilty was entered it was the judge's sole responsibility to fix the punishment. * * * "The court after an extensive pre-sentence investigation and an investigation by the Parole Commission condemned the defendant to death."

In the instant case the superior court judge clearly indicated in the rendition of the judgment and sentence that the punishment was determined by the jury and that the sentencing was based on the jury ver-

dict fixing the penalty at death rather than the court's own determination.

While these matters were not directly raised by either appellant or appellee they were indirectly raised by the assignments of error to the admission of the evidence and the instructions of the court to the jury in the special proceedings submitting to the jury the question of determining sentence to be imposed. These matters are of public concern, and are fundamental to the consideration of the questions involved in this case.

In the case of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (April 8, 1968), which involved the constitutionality of the Federal Kidnapping Act, which statute creates an offense punishable by death "if the verdict of the jury shall so recommend," but sets forth no procedure for imposing the death penalty upon a defendant who waives the right to a jury trial, or upon one who pleads guilty. The government contended on a plea of guilty that the Federal Kidnapping Act, by implication, authorizes a procedure for the convening of a special jury for the sole purpose of deciding whether a defendant should be put to death. The United States Supreme Court refused to approve such a procedure. In discussing this question, the Court stated:

"The Government nonetheless maintains that Congress' failure to provide for the infliction of the death penalty upon those who plead guilty or waive jury trial was no more than an oversight that the courts can and should correct. At least twice, Congress has expressly authorized the infliction of capital punishment upon defendants convicted without a jury, but even on the assumption that the failure of Congress to do so here was wholly inadvertent, it would hardly be the province of the courts to fashion a remedy. Any attempt to do so would be fraught with the gravest difficulties: If a special jury were convened to recommend a sentence, how would the penalty hearing proceed? What would each side

be required to show? What standard of proof would govern? To what extent would conventional rules of evidence be abrogated? What privileges would the accused enjoy? Congress, unlike the state legislatures that have authorized jury proceedings to determine the penalty in capital cases, has addressed itself to none of these questions.

\* \* \* \* \* \*

"If any such approach should be inaugurated in the administration of a federal criminal statute, we conclude that the impetus must come from Congress, not from this Court. \* \* \*"

In the instant case this Court is confronted with similar questions. The defendant has assigned as error the admission of evidence, and instructions of the court. In passing upon these, the Court would have to determine such questions as whether conventional rules of evidence had been abrogated and what privileges the accused would enjoy; the burden of proof; the question of whether after an admission of guilt the state would be permitted to prove the details of the crime, and if so the type of evidence that would be admissible.

Such procedure clearly would not be according to the statutes governing sentences where a plea of guilty is entered. We therefore hold that the procedure followed in the instant case was improper and in violation of statutory mandates, and that the trial court did not have authority to order a jury to be empaneled to sit for the purpose of determining the sentence to be imposed on defendant after his plea of guilty to first-degree-murder charges, and that the duty devolved upon the court to determine the sentence.

■ Under the fourth question defendant contends that the Arizona statutes providing for the death penalty are unconstitutional as being violative of the cruel-and-unusual-punishment prohibitions of the Eighth and Fourteenth Amendments of the United States Constitution and of Article II, Section 15, of the Arizona Constitution, A.R.S. We hold that the imposition of the

death penalty for a first-degree murder conviction is not violative of the cruel-and-unusual-punishment prohibitions of either the United States or Arizona constitutions.

In Jackson v. Dickson (9th Cir. 1963), 325 F.2d 573, the court, in upholding the death penalty, stated:

"A long series of decisions of the Supreme Court has held or stated that the death penalty, as such, is neither cruel nor unusual. * * *" [Cases cited.]

In Arizona the death penalty has been upheld recently in State v. Janovic, 101 Ariz. 203, 417 P.2d 527; State v. Alford, 98 Ariz. 124, 402 P.2d 551; and State v. Jones, 95 Ariz. 4, 385 P.2d 1019. See also Hernandez v. State, 43 Ariz. 424, 32 P.2d 18, where this Court held that the 1933 Arizona Constitutional Amendment, Art. 22, Sec. 22, prescribing lethal gas for execution of death penalty was not violative of the Eighth Amendment of the United States Constitution as imposing cruel and unusual punishment.

Defendant also contends that the sentence of death imposed by the jury was excessive, and therefore this Court should exercise its right and discretion to reduce the sentence to that of life imprisonment. This question will have to be determined by the trial court at the time of re-sentencing.

For the reasons stated above, the sentence is set aside, and the case is remanded for procedure and sentencing in accordance with this decision.

UDALL, Vice C. J., and STRUCKMEYER, BERNSTEIN, and LOCKWOOD, JJ., concur.