489 P.2d 231

**The STATE of Arizona, Appellee,**

**v.**

**David Oliver WILLIAMS, Appellant.**

**No. 2214.**

Supreme Court of Arizona,
In Banc.

Oct. 5, 1971.

Gary K. Nelson, Atty. Gen., by Jack M. McCormick and William P. Dixon, Asst. Attys. Gen., Phoenix, for appellee.

William T. Healy, Tucson, for appellant.

CAMERON, Justice.

David Oliver Williams, with advice of counsel, entered a plea of guilty to a charge of murder in the first degree. As the result of plea bargaining, pending charges of robbery and conspiracy were dismissed. Upon entry and acceptance of his plea, the defendant was sentenced to death by the trial court and he appeals therefrom. We are called upon to decide:

1. Whether the defendant should have been permitted to withdraw his plea of guilty.

2. Whether § 13–453 A.R.S., relating to sentencing on a guilty plea to first degree murder, is unconstitutionally vague and ambiguous.

The facts necessary to decide this appeal are as follows. David Oliver Williams and Donnell Thomas were charged by the State with an open charge of murder, robbery and conspiracy. After severance, Donnell Thomas was found by a jury to be guilty of first degree murder and was sentenced to death. The defendant in this case was originally represented by Pima County Deputy Public Defender Arthur R. Buller and Michael M. Moore, co-counsel. Defense counsel engaged in a practice known as "judge shopping" in an attempt to avoid the death penalty for their client which, as a result of Thomas' sentence, was a very real possibility. With this undisclosed purpose in mind they proceeded to the Pima County Court Administrator's office to determine who would be presiding at trial and, if possible, to obtain a judge for the purpose of entering a plea. While there and engaged in general conversation, the trial judge was alleged to have stated that the selection of a judge should present no real problem because, in this day and age, no judge would sentence a defendant to death on a guilty plea.

Subsequently, the defense attempted to enter a plea before another judge. The attempt was unsuccessful. The case was assigned to a third judge but the prosecution filed an affidavit of bias and prejudice against him, Rule 196 et seq., Rules of Criminal Procedure, 17 A.R.S., and the matter was finally assigned to the instant judge. Mr. Moore at this point withdrew from the case.

On the day of trial, defense counsel was approached by the trial judge who requested that counsel check with the defendant to see if he desired to change his plea to guilty. Taking this inquiry as a reaffirmation of anticipated leniency, Mr. Buller went into consultation with his client. The defendant again insisted on dismissal of the additional charges. According to the affidavit of Mr. Buller, the following transpired:

"That during these conversations, I returned to the Judge's chambers and in the presence of Horton C. Weiss, Prosecutor, told Judge Marks that Mr. Williams would not plead to first-degree murder unless the robbery and conspiracy charges were dropped; whereupon Mr. Weiss showing reluctance, Judge Marks assured me that if Mr. Williams wished to plead to first he would 'step in' at that point; whereupon I hastened to advise Mr. Williams of this knowledge, and once again assured him the deal was for life imprisonment; whereupon Mr. Williams agreed to change his plea, which was done."

The plea was accepted and the prosecutor dropped the additional charges. At the sentencing a few days later, when it appeared that the judge would impose the death penalty, the defendant attempted to withdraw his plea. His motion was denied and he was sentenced to death.

WITHDRAWAL OF THE
GUILTY PLEA

At the time of the plea the following transpired in chambers:

"THE COURT: * * * How do you plead to the amended information, Mr. Williams, guilty or not guilty?

"MR. WILLIAMS: Guilty.

"THE COURT: Mr. Williams, I have to ask you a series of questions to determine whether or not I will accept the plea of guilty which you have entered. I have to advise you, and I have to know that you understand and that you have a right to a speedy trial by jury with aid of counsel but that you have no such right if you plead guilty and if your plea of guilty is accepted by the Court, do you understand that?

"MR. WILLIAMS: Yes, sir.

"THE COURT: Sit here so the reporter can see you. You are not talking loudly enough and he must catch your voice. Thank you.

You understand further, Mr. Williams, that you will have the assistance of counsel at the time of sentence if your plea is accepted by the Court?

"MR. WILLIAMS: Yes, sir.

"THE COURT: You understand that the nature of the charge against you, that is murder in the first degree, you understand that means the taking of a human life with malice aforethought?

"A Yes, sir.

"Q Did you in fact commit murder of Mason Edward Branch?

"A Yes, sir.

"Q Did you commit that murder on or about October 4, 1969?

"A Yes, sir.

"Q Did you commit that murder in Pima County, Arizona?

"A Yes, sir.

"Q Did you commit it with a fire arm?

"A Yes, sir.

"Q Did you actually shoot the fire arm?

"A Yes, sir.

"Q Has anybody induced you by any promise or representation as to what the sentence might be that might be imposed on you by the Court?

"A No, sir.

"Q You understand that the possible range of sentence is only death or life imprisonment and that the Court will have no choice other than death or life imprisonment.

"MR. BULLER: Your Honor, I think that we discussed this downstairs. His question is if life imprisonment means life without the possibility of parole, then would he—I told him my legal thinking was that it did not mean that, but that is his question at this time.

"THE COURT: As far as the statute goes—let me read the statute to you so there can be no doubt, then I can explain what is bothering you. The statute says, 'That if a person guilty of murder in the first degree shall suffer death, or imprisonment in the state prison, or life, at the discretion of the jury trying the person, and it says or upon the plea of guilty, the Court shall determine the punishment.' My understanding is that the present—I can't actually even say present—we have had a series of changes in the last three years of the make up of the Board of Pardons and Paroles. They have a discretion in which it can consider parole on life imprisonment. It's not my intention, because the statutes don't say—they won't give me the right about that without parole. I have heard about it being done. I'm not sure in Arizona. The statute doesn't give me that right. Is that clear?

"A Yes, sir.

"Q I will also tell you Mr. Buller spoke about that earlier this morning after his conference with you in the presence of Mr. Weiss, that as of a year ago, I was informed that the Board of Pardons and Paroles had then made up—because I think it changed last July 1st—it's now a professional

board of five, whereas prior to that it was three or—anyway there has been a change. And it is my understanding that as of a year ago a man was entitled to be heard on an application for parole on a life imprisonment sentence after seventeen and one half years. I don't know whether this means seventeen and a half years straight time or with good time. I have no idea what that means. That is what I was told by the chairman of the Board of Pardons and Paroles. Is that clear?

"A Yes, sir.

"Q Do you have any other questions on that?

"A No, sir.

"Q Now, are you entering this plea voluntarily and by your own free will, because you are guilty and for no other reason?

"A Yes, sir.

"Q Have you discussed the entry of your plea of guilty fully with your attorney?

"A Yes, sir, I have.

"Q Are you satisfied with the representation afforded by your attorney?

"A Yes, sir.

"Q Do you have any complaint regarding his representation of you in this case?

"A No, sir.

"Q All right, let the record show that, based upon the answers to the questions—

"MR. BULLER: Your Honor, I don't mean to interrupt, but is the Court finished with this question?

"THE COURT: Yes.

"MR. BULLER: I would like, because of the extent of the conversation I have had with David, to have the Court question him on two or three points to make sure I did not induce him to plea.

"THE COURT: As a matter of fact, Mr. Buller, you may ask the questions of him.

"MR. BULLER: Well, I think—there is one thing I told him and if I'm wrong, I want it said now. I don't want him under misapprehension. David, I told you this morning about the seventeen year deal on the Board of Pardons and Paroles to be eligible.

"A Yes, sir.

"Q I also told you that that was not a statute or law of the State of Arizona, but it was a policy that the Board— that it could be changed in one direction, higher or lower, and that they had the discretion, based upon many factors, to keep you there longer or to let you out sooner than seventeen years. I told you that, didn't I?

"A Yes, sir.

"Q And that knowledge, I take it, is that it was a factor in your decision, that there was a possibility this could happen.

"A No, sir.

"Q Well, were those—

"THE COURT: Let me say this. I know of no statutory time limit. I believe it is wholly discretionary with the Board. The Board is also made up of human beings and they change policies. It could go one way or the other. I agree with Mr. Buller. I don't know what will happen ten years from now, or twenty five years from now. You understand that?

"A (By the Witness) Yes, sir.

"MR. BULLER: One other thing, I also told you that the way you behaved up there and worked would be a factor with the Board, and the fact that myself or someone else in our office, or another attorney, or your family, could petition the Board in five, six, seven years to begin to try to get you out.

"A Right.

"Q You understand that this can happen?

"A Yes, sir.

"THE COURT: Let me make it clear. You understand that I have not discussed with Mr. Buller or Mr. Weiss or with you or anybody whether it's going to be the death penalty or Life?

"A Yes.

"Q You have to understand that because that is the whole truth, do you?

"A Yes, sir.

"Q Anything else, Mr. Buller?

"MR. BULLER: I think that covers it, your Honor.

"THE COURT: Mr. Weiss.

"MR. WEISS: One moment, if the Court please. I don't believe I have any question.

"THE COURT: Mr. Weiss, if the Court accepts the plea are you prepared to move to dismiss on the two counts in A–18020?

"MR. WEISS: I am, your Honor.

"THE COURT: Very well. Let the record show the Court expressly finds the defendant's plea of guilty is made voluntarily, and with the understanding of the nature of the charges, and with the understanding of the consequences of the plea. Let the record further show that the Court finds that the answers to the questions were intelligently made and knowingly made. Is this correct?

"A Yes, sir.

"THE COURT: The plea may be accepted and it is."

We are not concerned here with the integrity of the plea of guilty by the defendant. We believe that the court properly accepted the plea of guilty and that the record supports the fact that it was freely and voluntarily made. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

▇ We are concerned with the alleged abuse of the trial court's discretion in refusing to set aside a plea of guilty where the defendant may have been misled by the court itself into thinking that the result of the plea would be different from what he actually received. While the general rule is that good faith representation of counsel that the defendant will receive a lighter sentence than he actually received will not strip a plea of its "voluntary nature", Floyd v. United States, 260 F.2d 910 (5th Cir. 1958); People v. Hines, 66

Cal.2d 348, 57 Cal.Rptr. 757, 425 P.2d 557 (1967); Walker v. State, 92 Idaho 517, 446 P.2d 886 (1968), the position of the judge is such that conduct on his part can be so misleading as to necessitate that a plea be withdrawn. In this case the discretion of the trial court should be liberally exercised in favor of permitting the plea to be withdrawn, especially if timely made. State v. Corvelo, 91 Ariz. 52, 369 P.2d 903 (1962); State v. Norgard, 92 Ariz. 313, 376 P.2d 776 (1962); State v. Moreno, 102 Ariz. 399, 430 P.2d 419 (1967). In the instant case, the decision to drop the additional charges—admittedly of no benefit to a defendant sentenced to death—certainly must have been misleading to a defendant. This together with the extended conversation by the judge on how many years a person will have to serve on a life sentence certainly led the defendant to expect what he had already hoped for, that is a life sentence. It may be that at the time the plea was entered the trial court fully intended to impose a life sentence and we do not say that the trial court in a case like this cannot, after a presentence report, change its mind. We believe, however, that the better practice is to then allow the plea to be withdrawn and the matter tried. Under the circumstances, we believe it was an abuse of the trial court's discretion to refuse to allow the defendant to withdraw his plea.

### CONSTITUTIONALITY OF § 13–453 A.R.S.

▇ Appellant also urges that the statute in question, as relates to its sentencing provisions, is unconstitutionally ambiguous. The statute provides that:

"A person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the person charged therewith, or upon a plea of guilty, the court shall determine the punishment." § 13–453 A.R.S.

Appellant urges that upon a plea of guilty the court is either limited to non-capital punishment or given unlimited scope in sentencing and is not limited to the jury

alternatives. In either event, he notes that a defendant cannot validly weigh the relative advantages or disadvantages to enter his plea, i. e. a violation of due process. We cannot concur. The alternatives of the judge when faced with a guilty plea are the same as those available to a jury and no more or no less. State v. Alford, 98 Ariz. 124, 402 P.2d 551 (1965).

## DEATH PENALTY

Appellant urges that we declare the death penalty to be a cruel and unusual punishment. Art. 2, Sec. 15, Arizona Constitution, A.R.S.; Fourteenth and Eighth Amendments of the United States Constitution. We have consistently refrained from so holding. State v. Malumphy, 105 Ariz. 200, 461 P.2d 677 (1969); State v. Boogs, 103 Ariz. 328, 441 P.2d 778 (1968).

## DISPOSITION

As noted in the opinion above, it was error to deny defendant's motion to withdraw his plea. In a previous case of this court we stated:

"We direct that this cause be remanded to the Superior Court for alternative proceedings, either: (1) If the State promptly indicates that it desires to re-try Sherrick for the crime of first degree murder invoking the death penalty, the court below shall set aside the judgment of conviction and proceed with a new trial. (2) But if the State does not so move for a new trial, the court below shall set aside the sentence of death and pronounce a sentence of life imprisonment." State v. Sherrick, 105 Ariz. 514, 516, 467 P.2d 908, 910 (1970).

There appears to be no doubt of the defendant's guilt in the instant case, and, but for the misleading remarks by the trial judge as set forth above, we would have no hesitancy in affirming the judgment and sentence. Because of the error, which was not contributed to by the State, we direct that the cause be remanded to the Superior Court for alternative proceedings, either: (1) if the State indicates it desires to try the defendant for the crime as charged calling for the death penalty and including the charges that were dropped, then the court shall set aside the plea of guilty and proceed to trial, or (2) if the State indicates that it does not wish to proceed to trial, then the plea of guilty shall remain and the court shall set aside the sentence of death and pronounce sentence of life imprisonment.

STRUCKMEYER, C. J., and LOCKWOOD and UDALL, JJ., concur.

Note: Justice JACK D. H. HAYS has disqualified himself in the determination of this matter.