The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Walter K. ADRIAN, Defendant-Appellant.

No. 83SA499.

Supreme Court of Colorado, En Banc.

June 10, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Eric Perryman, Asst. Attys. Gen., Appellate Section, Denver, for plaintiff-appellee.

Lee Allen Hawke, Hawke & Cornelius, Boulder, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Walter K. Adrian, appeals a Boulder County District Court ruling denying his request to vacate his indeterminate sentence of one day to life under the Colorado Sex Offenders Act (CSOA), §§ 16–13–201 to –216, 8 C.R.S. (1978 & 1984 Supp.),[1] based upon his guilty plea to one count of sexual assault on a child, § 18–3–405, 8 C.R.S. (1978 & 1984 Supp.). The defendant moved to vacate his sentence and withdraw his guilty plea under Crim.P. 35(a) and (c), contending *inter alia* that the CSOA violated his constitutional right to equal protection of the laws,[2] that his guilty plea was invalid under both Crim.P. 11 and the CSOA, and that the advisement of procedural rights under the CSOA was inadequate. The district court denied the motion; we affirm the ruling of the district court.

On November 8, 1977, following a providency hearing, the defendant entered a guilty plea to one count of sexual assault on a child. § 18–3–405. On November 9, 1977, the defendant moved for sentencing under the CSOA, and the district court orally advised him of his rights under that statute. § 16–13–206, 8 C.R.S. (1978). On February 22, 1978, the defendant received a written advisement of his rights under the CSOA, *id.*, and the court held a hearing under the CSOA. § 16–13–210, 8 C.R.S. (1978). The parties stipulated that the psy-

1. The structure of the Colorado Sex Offenders Act is described in *People v. Kibel* and *People v. Slusher,* 701 P.2d 37 (Colo.1985), announced today.

2. U.S. Const. amend. 14; Colo. Const., art. II, § 25. The latter provision, guaranteeing due process of law, includes by implication the right to equal protection of the laws. *People v. Wilhelm,* 676 P.2d 702, 704 n. 4 (Colo.1984).

chiatric reports prepared in accordance with the CSOA, § 16–13–207, 8 C.R.S. (1978), would substitute for live testimony at the hearing. The district court found beyond a reasonable doubt that the defendant constituted a threat of bodily harm to members of the public, § 16–13–211, 8 C.R.S. (1978), and committed the defendant to the custody of the Department of Corrections,[3] designating the Colorado State Penitentiary as the receiving center.

On April 26, 1978, the state parole board, under the provisions of the CSOA, § 16–13–216(2), 8 C.R.S. (1984 Supp.), transferred the defendant to the Colorado State Hospital. In May 1982, the parole board transferred the defendant back to the penitentiary upon the recommendation of the hospital disposition committee. Later that month, the defendant filed a motion to vacate his sentence and set aside his guilty plea under Crim.P. 35(a) and (c). The defendant contended that the CSOA denied his constitutional right to equal protection of the laws because it does not provide for judicial review of the justification for his continued commitment, while such right is afforded to civil committees, § 27–10–109(5), 11 C.R.S. (1982 & 1984 Supp.), defendants found not guilty by reason of insanity, § 16–8–115(1), 8 C.R.S. (1984 Supp.), and defendants found incompetent to proceed. §§ 16–8–113 and –114.5, 8 C.R.S. (1978 & 1984 Supp.). The defendant

also argued that his guilty plea was invalid under both Crim.P. 11 and the CSOA because he had not been advised that he could be sentenced to the penitentiary under the CSOA. The district court denied the defendant's motion, and the defendant appeals.[4]

### I.

■ The defendant's equal protection argument is identical to the equal protection challenge we today reject in *People v. Kibel* and *People v. Slusher*, 701 P.2d 37 (Colo.1985). For the reasons stated in those consolidated cases, we reject the defendant's equal protection argument here.[5]

### II.

The defendant asserts that his guilty plea was invalid because he was never advised of the possibility that he might be incarcerated in the penitentiary under the CSOA. We disagree.[6]

■ Due process requires that the court accept a guilty plea only when it has ascertained that the plea is voluntary, knowing and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Harshfield v. People*, 697 P.2d 391, 393 (Colo.1985); *People v. Leonard*, 673 P.2d 37, 39 (Colo.1983). A plea is knowingly made, and constitutionally valid, only if

3. In its written ruling, the district court ordered the defendant committed to the Department of Institutions. However, after August 1, 1977, when the Department of Corrections came into existence, the state prisons no longer were under the jurisdiction of the Department of Institutions. *See* Ch. 223, sections 1–40, 1977 Colo. Sess.Laws 901–58. The defendant in fact was committed to the custody of the Department of Corrections, and we interpret the district court's order as so committing him.

4. Because the defendant challenges the constitutionality of a statute, this case was transferred here from the court of appeals under sections 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

5. Like the defendants in *Kibel* and *Slusher*, the defendant here argues that equal protection mandates that sex offenders be afforded the same right of judicial review granted to civil committees, defendants found not guilty by rea-

son of insanity, and defendants found incompetent to proceed. We rejected this contention in *Kibel* and *Slusher*, holding that, at least prior to the expiration of a period of confinement equal to the maximum permissible sentence the defendants could have received for their underlying crimes, there exists a rational basis for denying judicial review to sex offenders. Here, the defendant was not confined beyond the maximum term for his underlying crime. Therefore, as in *Kibel* and *Slusher*, we reject his equal protection challenge.

6. The defendant also contends that the written advisement he received pursuant to section 16–13–206, 8 C.R.S. (1978), did not fully set forth his statutory rights. His argument is without merit. The written advisement sets forth the defendant's rights in the exact language contained in section 16–13–206.

the district court ensures that the defendant is fully aware of the consequences of his plea. *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1712; *People v. Heinz*, 197 Colo. 102, 105, 589 P.2d 931, 933 (1979). Crim.P. 11 sets forth a procedure for taking guilty pleas in accordance with this constitutional mandate. *Leonard*, 673 P.2d at 39–40. Among the procedures set forth in that rule is the requirement that, prior to accepting any guilty plea, the district court determine that the defendant understand the penalty or penalties which may be imposed for his crime. Crim.P. 11(b)(4). In addition, the CSOA sets forth a specific advisement concerning penalties that must be given to any person pleading guilty to a sex offense:

> Before the district court may accept a plea of guilty from any person charged with a sex offense, the court shall, in addition to any other requirement of law, advise the defendant that he may be committed to the custody of the department [of corrections], including any penal institution under the jurisdiction of the department, as provided in section 16–13–203.

§ 16–13–204, 8 C.R.S. (1978).

■ In the present case, the defendant contended at his Rule 35 hearing and maintains on appeal that he was never informed that he might be committed to the penitentiary under the CSOA, and that he believed, based on conversations with his attorney, that he would be sentenced to the Colorado State Hospital. However, the transcript of the providency hearing reveals that, prior to accepting the defendant's guilty plea, the district court advised the defendant that he might "be committed to the custody of the Department of Corrections or institutions under the jurisdiction of the department" for an indeterminate term. This advisement was not as specific as it should have been under section 16–13–204 because it omits the fact that the defendant could be committed to "any penal institution" run by the Department of Corrections. Nonetheless, we previously have held when considering Crim.P. 11 advisements that no particular ritual or formulaic advisement of

rights is required; rather, the crucial question is whether the record demonstrates "that the defendant's plea was voluntary and intelligently entered with full knowledge of the nature and elements of the offense and of the waiver of his rights as an accused person...." *People v. Lambert*, 189 Colo. 264, 267, 539 P.2d 1238, 1240 (1975). Section 16–13–204 does not require more. Here, at the providency hearing, the court told the defendant that he could be placed in any institution under the jurisdiction of the Department of Corrections; since it is common knowledge that the Department of Corrections manages the state prison system, the defendant was advised in substance, although not in form, that he might be confined to a state prison under the CSOA.

The defendant's understanding of the consequences of his plea is further demonstrated by subsequent CSOA hearings. At the January 9 hearing, when the defendant moved to proceed under the CSOA, the district court advised him that he might "be committed to the custody of the department, including any penal institution under the jurisdiction of the department...." The court also informed the defendant that the Colorado State Penitentiary is the receiving center for all persons committed under the CSOA. Moreover, the defendant's attorney informed the court that he had told the defendant of possible consequences under the CSOA "[n]umerous times." Upon hearing this information, the defendant did not protest or attempt to withdraw his earlier guilty plea, but rather reaffirmed his desire to proceed under the CSOA. Based upon this record, we conclude that the defendant was adequately advised of and understood the possible consequences of his guilty plea to a sex offense.

The ruling of the district court is affirmed.