The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Steven Albert KIBEL,
Defendant-Appellant.

The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Floyd David SLUSHER,
Defendant-Appellant.

Nos. 83SA491, 83SA492.

Supreme Court of Colorado,
En Banc.

June 10, 1985.
Rehearing Denied July 1, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Eric Perryman, Asst. Atty. Gen., Appellate Section, Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Seth J. Benezra, Deputy State Public Defender, Denver, for defendants-appellants.

DUBOFSKY, Justice.

The defendants, Steven Kibel and Floyd David Slusher, appeal the district courts' rulings that the release procedure of the Colorado Sex Offenders Act of 1968 (CSOA), §§ 16–13–201 to –216, 8 C.R.S. (1978 & 1984 Supp.), did not violate their constitutional right to equal protection of

the laws,[1] and the courts' rejection of their claims that they had been denied constitutional and statutory rights to treatment under the CSOA.[2] Additionally, the defendant in *People v. Kibel*, No. 83SA491, challenges the district court's ruling that the release procedure of the CSOA did not violate his right to due process of law.[3] We consolidated these cases on appeal,[4] and affirm the rulings of the district courts.

I.

To understand the factual background of these cases and the defendants' claims, a brief review of CSOA is helpful. The CSOA grants authority to the district court to commit any person convicted of a sex offense [5] to the custody of the Department of Corrections (department) for an indeterminate term of one day to life. § 16–13–203, 8 C.R.S. (1978). Upon the motion of the district attorney, the defendant, or the court, within twenty days of conviction, the court must commence CSOA proceedings. § 16–13–205, 8 C.R.S. (1978). The court advises the defendant orally and in writing of certain procedural rights, § 16–13–206, 8 C.R.S. (1978), and commits him for examination by two psychiatrists. § 16–13–207(1), 8 C.R.S. (1978). The examining psychiatrists submit written reports to the court, setting forth their opinions as to 1) whether the defendant, if at large, poses a threat of bodily harm to members of the public; 2) whether the defendant is "mentally deficient"; 3) whether the defendant

1. U.S. Const., amend. 14; Colo. Const., art. II, § 25. The latter provision, which addresses due process of law, guarantees the right to equal protection of the laws by implication. *People v. Wilhelm*, 676 P.2d 702, 704 n. 4 (Colo.1984).

2. In *People v. Slusher*, No. 83SA492, the district court did not address the defendant's claim that he had been denied his constitutional and statutory right to treatment; we treat the court's silence as rejection of the claim. In *People v. Kibel*, No. 83SA491, the defendant claimed only a constitutional right to treatment.

3. U.S. Const., amend. 14; Colo. Const., art. II, § 25.

4. These appeals originally were filed in the Court of Appeals; subsequently, they were transferred to this court because the defendants question the constitutionality of a statute. §§ 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

5. In section 16–13–202(5), 8 C.R.S. (1978), "sex offense" is defined as sexual assault on a child, § 18–3–405, 8 C.R.S. (1978 & 1984 Supp.), aggravated incest, § 18–6–302, 8 C.R.S. (1984 Supp.), sexual assault other than misdemeanor third degree sexual assault, §§ 18–3–401 to –404, 8 C.R.S. (1978 & 1984 Supp.), or an attempt to commit any of these crimes.

could benefit from psychiatric treatment; and 4) whether the defendant could be adequately supervised on probation. § 16–13–207(2), 8 C.R.S. (1978). The probation department also submits to the court a report on the defendant. § 16–13–208, 8 C.R.S. (1978). After receiving these reports, the court may terminate CSOA proceedings and sentence the defendant for his substantive offense. § 16–13–209, 8 C.R.S. (1978).

If the court proceeds under the CSOA, a hearing is held, at which the court receives evidence concerning the public danger posed by the defendant. § 16–13–210, 8 C.R.S. (1978). The defendant has the right to subpoena and examine witnesses, to receive a list of prosecution witnesses ten days before the hearing, and to cross-examine these witnesses as well as the psychiatrists and probation officers who have submitted reports. *Id.* The court then may commit the defendant under the CSOA if it finds beyond a reasonable doubt that the defendant poses a threat of bodily harm to members of the public. § 16–13–211, 8 C.R.S. (1978). Six months following this commitment, and every twelve months thereafter, the state parole board (board) must "review all reports, records, and information" concerning the defendant. § 16–13–216(1)(a), 8 C.R.S. (1978). The board may parole the defendant, § 16–13–216(4), 8 C.R.S. (1978), or transfer the defendant to "any facility under the jurisdiction of the department, if the board deems it to be in the best interests of said person and the public." § 16–13–216(2), 8 C.R.S. (1984 Supp.). The board must make a written ruling after each review. § 16–13–216(1)(b), 8 C.R.S. (1978).

## II.

### A.

In July 1976, the defendant in No. 83SA491, Steven Kibel, pled guilty before the Lake County District Court to charges of first degree sexual assault, § 18–3–402, 8 C.R.S. (1978 & 1984 Supp.), and second degree kidnapping. § 18–3–302, 8 C.R.S. (1984 Supp.). He received an indeterminate sentence under the CSOA for the sexual assault charge, and was also sentenced to a prison term of one day to four years for the kidnapping charge.[6] In October 1976, the parole board transferred the defendant from the Colorado State Penitentiary (penitentiary) to the Colorado State Hospital (hospital).

In November 1981, the defendant moved to vacate his sentence under Crim.P. 35(a), alleging that the sentence had not been accompanied by the findings required by the CSOA. The district court granted the motion, and the prosecution filed a renewed motion for commencement of CSOA proceedings. After receiving the required oral and written advisement, the defendant was examined by Dr. Stephen Bishop and Dr. Stephen Popkin. Both psychiatrists concluded that the defendant remained dangerous to the public, was not mentally deficient, could benefit from further psychiatric treatment, and could not be adequately supervised on probation. Dr. Bishop's finding of dangerousness was based upon the defendant's violation of hospital work-pass rules. Dr. Popkin grounded his finding of dangerousness in the defendant's reports of violent fantasies, which led the doctor to conclude that the defendant might respond with violence to blows against his self-esteem.

Following a hearing on August 19, 1982, at which the two psychiatrists and the defendant testified, the district court concluded beyond a reasonable doubt that the defendant continued to pose a threat of danger to the public, and ordered the defendant recommitted under the CSOA. The court also rejected the defendant's claims that the release procedures of the CSOA violated the defendant's rights to due process and to equal protection of the laws, and that "the failure of the act to affirma-

---

6. Also in 1976, the defendant pled guilty to an unrelated sexual assault in Boulder County, and received a seven to ten year prison sentence. In 1980, the defendant was permitted to withdraw his guilty plea, and the charge was dismissed.

tively provide adequate individual treatment violates due process of law...."

On September 14, 1982, the parole board transferred the defendant to the penitentiary from the hospital. He was paroled on October 7, 1983.

### B.

In February 1977, Floyd David Slusher, the defendant in No. 83SA492, was charged with nine counts of sexual assault on a child. § 18–3–405, 8 C.R.S. (1978 & 1984 Supp.). On May 12, 1977, the defendant pled guilty before the Boulder County District Court to one of the counts, and the remaining counts were dismissed. On September 12, 1977 the prosecutor moved for commencement of CSOA proceedings, and the defendant received the required advisement of rights. The defendant was examined by Dr. William Wittlin and Dr. Dean Plazak. Dr. Wittlin concluded that the defendant posed a danger to the public because the defendant admitted that he would have difficulty refraining from sex with young boys. Dr. Plazak found that the defendant did not constitute a threat of bodily harm to members of the public, but nonetheless concluded that the defendant was a "suitable candidate for proceeding under the sexual offender act." Both psychiatrists determined that the defendant was not mentally deficient, could benefit from psychiatric treatment, and could not be adequately supervised on probation.

After conducting a CSOA hearing, the district court concluded beyond a reasonable doubt that the defendant posed a threat of danger to the public, and accordingly sentenced the defendant to an indeterminate term in the custody of the department. In December 1977, the defendant was transferred to the hospital from the penitentiary.

In August 1982, the defendant moved to vacate his sentence under Crim.P. 35(a) and (c), contending that the CSOA violated his constitutional right to equal protection of the laws, and that the conditions under which he was held at the hospital violated his statutory and constitutional right to treatment. The district court ruled against the defendant on his equal protection claim, but made no ruling concerning the defendant's claim of a right to treatment. The defendant has since been paroled.[7]

### III.

The defendants contend that the CSOA violates their right to equal protection of the laws because it does not afford periodic judicial review of whether the justification for their confinement continues. Such a right is afforded to involuntary civil committees, § 27–10–109(5), 11 C.R.S. (1982), criminal defendants found not guilty by reason of insanity, § 16–8–115(1), 8 C.R.S. (1984 Supp.), and criminal defendants found incompetent to proceed. §§ 16–8–113 and –114.5(2), 8 C.R.S. (1978 & 1984 Supp.). In contrast, defendants confined under the provisions of the CSOA receive no judicial review following the initial determination of dangerousness; rather, the parole board annually reviews the defendant's continued confinement. § 16–13–216(1)(a). The denial of equal protection inherent in these inconsistent statutory schemes, the defendants assert, is particularly acute where defendants are confined under the CSOA beyond the statutory maximum prison term they might have received for their underlying crimes.

■ Because the classification of sex offenders under the CSOA neither creates a suspect class nor infringes upon a fundamental right, the statutory scheme will survive an equal protection challenge if the state can demonstrate that the classifica-

---

7. Under the CSOA, the board is authorized "to parole and reparole, and to commit and recommit for violation of parole, any person committed pursuant to section 16–13–203," or "to issue an absolute release to any person committed pursuant to section 16–13–203, if the board deems it in the best interests of that person and the public and that the person, if at large, would not constitute a threat of bodily harm to members of the public." § 16–13–216(4) and (5), 8 C.R.S. (1978). Nothing in the record or the defendants' arguments addresses any conditions which the parole board may have imposed upon the defendants' parole.

tion bears a rational relationship to a legitimate state purpose. *People v. White*, 656 P.2d 690, 694 (Colo.1983). The state must show, in other words, that "a distinction made [has] some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 762, 15 L.Ed.2d 620 (1966); *see also People v. Calvaresi*, 188 Colo. 277, 281–82, 534 P.2d 316, 318 (1975).

■ In *White*, the defendant argued that the CSOA violated equal protection because it afforded fewer "procedural protections" than were granted to either civil committees or mentally ill prisoners. 656 P.2d at 693. We found no equal protection violation because sex offenders, unlike civil committees or mentally ill prisoners, had been found guilty of crimes regarded by society as particularly heinous. *Id.* at 694. The state therefore has a greater interest in protecting the public from sex offenders than from the other categories of committed persons, and the less stringent procedural protections afforded sex offenders are rationally related to this interest. *Id.* The rationale of *White* applies to distin-

guish the defendants in both of the instant cases from the groups to which they compare themselves.

In *White*, however, we did not reach one of the specific questions presented here: whether the lack of periodic judicial review can be·justified *after* the expiration of a period of confinement equal to the maximum prison term that the defendant otherwise might have received for the underlying crimes.[8] However, we need not resolve the question today because the record does not show that either defendant was confined beyond the maximum permissible sentence for his underlying crime. Defendant Kibel pled guilty to a class 3 felony, § 18–3–402(1), for which he might have been sentenced to a maximum prison term of forty years. Ch. 102, sec. 26, § 40–1–105, 1974 Colo.Sess. Laws 401, 409. Defendant Slusher pled guilty to a class 4 felony, § 18–3–405(2), for which he might have received a maximum prison term of ten years. Ch. 93, sec. 7, § 18–1–105, 1976 Colo.Sess. Laws 545, 548. Both defendants

**8.** The period following the expiration of the maximum permissible sentence arguably is analytically distinct from the initial period of confinement corresponding to the sentence that the defendant otherwise might have received. Sex offenders are confined for an indeterminate period because, upon their conviction of sex offenses as defined in the CSOA, a court finds in independent proceedings that they pose a danger to members of the public. §§ 16–13–207(2), 16–13–211; *see Specht v. Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211 18 L.Ed.2d 326 (1967). Without such a finding of danger to the public, sex offenders could be sentenced only to determinate prison terms. Because the extended period of confinement is based in part upon a finding of future dangerousness, the commitment *during this period* may be viewed as analogous to other commitments based upon predictions of future harm. *Ohlinger v. Watson*, 652 F.2d 775, 778 n. 8 (9th Cir.1980) (indeterminate sentence for sex offender analogous to civil commitment). For this reason, the United States Supreme Court has indicated that the rational basis for distinguishing sex offenders from other persons committed because they constitute a public danger may disappear once the maximum sentence for the underlying crimes has expired. *Humphrey v. Cady*, 405 U.S. 504, 510–11, 92 S.Ct. 1048, 1052–53, 31

L.Ed.2d 394 (1972). Several courts, relying on *Humphrey*, have held that, following the expiration of a period equal to the maximum permissible sentence for the underlying crimes, sex offenders must be afforded the same procedural protections as civil committees or other groups whose commitment serves the state interest in public protection. *In re Andrews*, 368 Mass. 468, 334 N.E.2d 15 (1975); *Grindle v. Miller*, 119 N.H. 214, 400 A.2d 787 (1979) (to avoid equal protection problems, statute interpreted to provide same procedures as those afforded civil committees once maximum sentence has expired); *see also Fritz v. State*, 284 N.W.2d 377 (Minn.1979) (because sex offender commitment limited to duration of maximum sentence, no equal protection violation in affording less procedural protection than that granted civil committees); *but see State v. Hungerford*, 84 Wis.2d 236, 267 N.W.2d 258, 268–69 (1978) (more stringent release standard for sex offenders than for civil committees does not violate equal protection because of greater danger posed by sex offenders); *State ex rel. Farrell v. Stovall*, 59 Wis.2d 148, 207 N.W.2d 809 (1973) (equal protection requires jury review for commitment and recommitment of sex offenders, but does not require review as often as that granted civil committees because of sex offenders' greater dangerousness).

were paroled prior to the expiration of the maximum sentences.[9]

■ A party does not have standing to challenge the constitutionality of a statute unless that party is directly affected by the alleged constitutional defect. *People v. Brown*, 632 P.2d 1025, 1026 (Colo.1981); *People v. Fite*, 627 P.2d 761, 766 (Colo. 1981); *People v. Tumbarello*, 623 P.2d 46, 48 (Colo.1981). Because the defendants here at this time are not affected by any ruling concerning the constitutionality of procedures following the expiration of their maximum sentences, they have no standing to assert a challenge concerning the procedures, and we reach no conclusion on the issue.

### IV.

■ In No. 83SA491, defendant Kibel argues that the CSOA violates due process by failing to provide periodic judicial review of the justification for his continued confinement.[10] We disagree.

■ No person may be deprived of liberty without due process of law. U.S. Const., amend. 14; Colo. Const., art. II, § 25. The deprivation of liberty triggering the protection of the due process clauses need not take the form of incarceration in prison; involuntary commitment to a mental institution also "constitutes a severe infringement on the basic interest of an individual to be free from governmental restraint and thus requires due process protection." *Chavez*, 629 P.2d at 1045; *accord Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Commitment infringes upon one's liberty interest when it is imposed in place of confinement in prison. *Vitek v. Jones*, 445 U.S. 480, 491–92, 100 S.Ct. 1254, 1262–63, 63 L.Ed.2d 552 (1980). Therefore, the confinement of the defendants here, whether in prison or in a mental hospital, is subject to the protection of the state and federal due process clauses.

■ Having concluded that the defendants are entitled to due process, we must determine what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Chavez*, 629 P.2d at 1046. The procedural protections required by the state and federal due process clauses cannot be fixed by formula; "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481, 92 S.Ct. at 2600; *accord Chavez*, 629 P.2d at 1046. In determining what procedures are required in any particular case, the court must weigh three factors: 1) the importance of the individual interest at stake; 2) the weight of the governmental interest in retaining the challenged procedures, including the interest in avoiding increased administrative and fiscal burdens; and 3) the degree to which the proposed procedures will lessen the risk of an erroneous deprivation of the individual's liberty or property. *Addington*, 441 U.S. at 425, 99 S.Ct. at 1809; *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Chavez*, 629 P.2d at 1046.

■ Here, the defendants' interest in regaining their liberty through fair and deliberate release mechanisms is at the core of interests requiring due process protection. *See Chavez*, 629 P.2d at 1046. Yet, it cannot be said that substituting a judicial decision-maker for the parole board would necessarily decrease the risk that release in appropriate circumstances would be withheld erroneously from sex offenders. Like the court, the parole board is a neutral body with no interest in the outcome of the cases before it. *See State ex rel. Terry v. Percy*, 95 Wis.2d 476, 290

---

9. Defendant Slusher argues that he would have completed his sentence on July 22, 1982, if he had received good-time credit on his sentence. However, the CSOA does not address whether sex offenders are entitled to receive good-time credit, and, in the absence of any briefing or argument on this issue, we do not consider it.

10. Defendant Slusher makes the same argument in No. 83SA492; however, Slusher did not raise any due process argument before the district court. We therefore cannot consider his argument on appeal. *People v. Martinez*, 634 P.2d 26, 32 (Colo.1981).

N.W.2d 713, 716 (1980) (due process requirements met when reexamination of sex offender confinement performed by neutral decision-maker and reviewed by Department of Health and Social Services). Moreover, a court already has determined, prior to commitment, that the sex offender constitutes a danger to society beyond a reasonable doubt, § 16–13–211(2); the parole board therefore does not make an initial determination of dangerousness, but rather is called upon only to monitor the offender for changes in character. We therefore reaffirm that "the mandated review by the board of parole within six months after the individual is committed and every year thereafter satisfies continuing procedural due process requirements." *White*, 656 P.2d at 693.[11]

### V.

▮ Finally, the defendants argue that they possess both a constitutional and statutory right to treatment under the CSOA, and that they were denied these rights by the conditions under which they were held. The defendants first contend that it constitutes cruel and unusual punishment, in violation of the eighth amendment to the United States Constitution and article II, section 20 of the Colorado Constitution, to confine sex offenders for an indefinite period without treatment. The defendants rely principally upon *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), in which the United States Supreme Court held that it constituted cruel and

unusual punishment to imprison a narcotics addict on the basis of his status, in the absence of specific criminal acts. The Court, however, suggested that state establishment of a program of compulsory treatment for narcotics addicts would be consonant with the constitutional proscription on cruel and unusual punishment. *Id.* at 665, 82 S.Ct. at 1419. Sex offenders, the defendants argue, likewise are confined on the basis of status—their dangerous character—rather than act; therefore, under *Robinson* they cannot be held for punishment, but may be held only to receive treatment. *See Ohlinger v. Watson*, 652 F.2d 775 at 777 (9th Cir.1980); *Balla v. Idaho State Board of Corrections*, 595 F.Supp. 1558, 1578 (D.Idaho 1984); *Davy v. Sullivan*, 354 F.Supp. 1320, 1328–29 (M.D.Ala. 1973); *People v. Feagley*, 14 Cal.3d 338 at 359, 121 Cal.Rptr. 509 at 522, 535 P.2d 373 at 386–87 (1975); *see also* Brakel & Rock at 353–54.[12] The defendants also maintain that the constitutional guarantee of equal protection of the laws mandates a right to treatment for sex offenders because civil committees are guaranteed treatment under section 27–10–116, 11 C.R.S. (1982). In addition, the defendants argue that a right to treatment is implied by the CSOA itself.[13]

▮ However, because the record in these cases fails to show that either defendant was denied treatment, we do not need to resolve these questions. According to his testimony at the 1982 CSOA hearing, defendant Kibel received one-on-one thera-

---

11. For the reasons stated in Part III of this opinion, we are not called upon to decide here whether judicial review might be required by due process considerations once the maximum permissible sentence for the underlying crime has expired. Two courts have indicated that due process requirements may be more stringent in such circumstances. *Davy v. Sullivan*, 354 F.Supp. 1320, 1326 (M.D.Ala.1973); *State v. McCarter*, 91 Wash.2d 249, 588 P.2d 745, 748 (1978).

12. In *People v. White*, 656 P.2d 690, 695 (Colo. 1983), we held that indeterminate confinement of a sex offender without treatment did not constitute cruel. and unusual punishment. However, the defendant in *White* had been con-

fined for a period lesser than the maximum sentence for his underlying crime. Therefore, the question of whether confinement beyond the maximum permissible sentence without treatment constitutes cruel and unusual punishment remains unresolved.

13. In *White*, we noted that "the primary purpose" of the CSOA is "protection of members of the public from proven dangerous sex offenders." 656 P.2d at 693. This emphasis on restraint of dangerous persons, however, does not foreclose a legislative intent to promote other, subsidiary goals, such as treatment of the offender. Treatment and cure of offenders, rendering them harmless to the public, is consistent with the legislative goal of public protection.

py, group therapy, community therapy and aversion therapy in the Colorado State Hospital.[14] Similarly, according to a Colorado State Hospital disposition report, defendant Slusher received individual and group therapy in accordance with a treatment plan that was reviewed monthly by the hospital staff. In the absence of expert testimony about the type and amount of treatment appropriate for these defendants, we are unprepared to find the described treatments inadequate. *See Nason v. Superintendent of Bridgewater State Hospital*, 353 Mass. 604, 233 N.E.2d 908, 914 (1968) (court's determination of appropriate treatment must be guided by the opinions of "competent doctors in their best judgment...."); Bazelon, *Implementing the Right to Treatment*, 36 U.Chi.L.Rev. 742, 745 (1969) (suggesting that judicial role in determining whether treatment is adequate be limited to a determination that offered treatment is within the range of alternatives considered reasonable by expert opinion).[15] Therefore, whatever right to treatment may exist under the CSOA has not been denied the defendants in these cases.

The rulings of the district courts are affirmed.

14. Although Kibel apparently was held in the penitentiary from September 14, 1982 through October 7, 1983, the record is silent concerning what treatment, if any, he received during that period.

15. Defendant Slusher testified at his Crim.P. 35 hearing that he considered his treatment inadequate because the hospital staff was unqualified, his treating psychiatrists were changed too often to provide coherent treatment, and the outline of his treatment plan was not followed. This lay testimony does not persuade us that the professional judgment of the hospital staff about proper treatment was inadequate. Defendant Slusher also submitted to the court a psychiatric report prepared by Dr. Arthur Roberts, in which Dr. Roberts indicated that the defendant "could benefit" from intensive psychotherapy, but that the hospital psychiatric staff was insufficient to provide it. In the absence of further explanation, we do not interpret Dr. Roberts' assertion as a general conclusion that Slusher's treatment was outside the range of alternatives considered reasonable by professionals in the field.