**Terry Trent WILSON, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Terry Trent WILSON, Respondent.**

**Nos. 83SC450, 83SC452.**

Supreme Court of Colorado,
En Banc.

Nov. 4, 1985.
Rehearing Denied Dec. 2, 1985.

David F. Vela, State Public Defender, Seth J. Benezra, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for respondent.

KIRSHBAUM, Justice.

We granted certiorari in these two

cases[1] to review the decision in *People v. Wilson*, 677 P.2d 948 (Colo.App.1983), in which the Court of Appeals reversed the trial court's denial of a motion by the defendant, Terry Trent Wilson, to vacate his plea of guilty to an information charging him with the offense of rape, as defined by C.R.S. 1963, § 40–3–401 (1971 Cum.Supp.).[2] We reverse the judgment of the Court of Appeals in *People v. Wilson*, and affirm the judgment of the trial court in other respects.

The material facts are not disputed. On March 20, 1973, the People filed an information charging the defendant with rape, two counts of deviate sexual intercourse, second degree kidnapping, and aggravated robbery. As the result of plea negotiations, the defendant agreed to enter a plea of guilty to the charge of rape in return for the dismissal of the remaining counts of the information and an agreement by the People to recommend sentencing under the Colorado Sex Offenders Act of 1968 (the Act).[3] A providency hearing was held, and on May 18, 1973, the defendant entered a plea of guilty to the charge of rape.

At the providency hearing the following colloquy took place between the trial court and the defendant:

THE COURT: Well, let me generally tell the defendant at this time, you understand that you are charged in Count 1, Mr. Wilson, with the charge of rape, in that on the 4th day of February, 1973, in Denver, Colorado, you did unlawfully and feloniously have sexual intercourse with a female person not your spouse, namely, [the victim], by compelling her to submit by force and by threat of serious bodily harm to be inflicted on [the victim]; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

Do you understand the nature of the charge against you?

THE DEFENDANT: Yes, sir.

THE COURT: Now, is this something you want to do, [defense counsel] has explained this situation to you, hasn't he?

THE DEFENDANT: Yes, sir.

The trial court then discussed aspects of the Act with the defendant, as follows:

THE COURT: The Court must tell you some of the things that the doctors will be asked to find, that is, to give an opinion as to whether or not if you remain at large you constitute a threat of bodily harm to members of the public; and they will also be asked to state whether you are mentally deficient, whether you could benefit from psychiatric treatment, and whether you can be adequately supervised under probation.

Those are things they will be called on to answer. If those should be answered in the negative, then the Court has a right to sentence you under the original rape statute, which carries not less than five or more than forty years in prison; but if the Court finds that these doctors

---

**1.** The People and the defendant have filed petitions for certiorari, *People v. Wilson*, 83SC452, and *Wilson v. People*, 83SC450, respectively. The issues raised by the petitions arise from the context of the defendant's guilty plea. We, therefore, consider both petitions in this single opinion.

**2.** At the time of the defendant's conviction, C.R.S.1963, § 40–3–401 (1971 Cum.Supp.), provided as follows:

(1) Any male who has sexual intercourse with a female person not his spouse commits rape, if:

(a) He compels her to submit by force or by threat of imminent death, serious bodily harm, extreme pain, or kidnapping, to be inflicted on anyone. . . .

That statute has since been repealed, and the offenses of sexual assault are now codified in §§ 18–3–401 to –405, 8 C.R.S. (1978).

**3.** *See* C.R.S. 1963, §§ 39–13–201 to –216, now codified at §§ 16–13–201 to –216, 8 C.R.S. (1978). The Act allows this state's district courts, subject to certain requirements, to commit persons convicted of a sexual offense to the custody of the Department of Institutions for an indeterminate term having a minimum of one day and a maximum of life. This custodial responsibility was later shifted to the Department of Corrections upon its creation. *See* Ch. 223, sec. 5, § 16–11–308, 1977 Colo.Sess.Laws 901, 902; Ch. 223, sec. 10, §§ 17–1–101 to –109, 1977 Colo.Sess.Laws 901, 903–06.

answer these questions in the affirmative, sentence will then be imposed under the sex offenders act, then the Court has the right to commit you to the Director of Institutions for a period of not less than a day and a maximum of life.

Do you understand that?

THE DEFENDANT: Yes, sir.

On July 13, 1973, the trial court conducted a sentencing hearing. At that hearing, two psychiatric examination reports concerning the defendant were filed. The reports contained factual information supplied by the defendant regarding the events underlying the charges filed against him. The defendant waived his right to an evidentiary hearing, and the trial court proceeded to impose sentence. Based on the reports, the trial court found the defendant a proper candidate for sentencing under the Act. The defendant was then sentenced to the custody of the Department of Institutions (the Department) for a term of one day to life.

The defendant was initially sent to the Colorado State Hospital at Pueblo, Colorado, for treatment as a sex offender, but was subsequently transferred to the Colorado State Penitentiary due to misconduct at the State Hospital. The defendant was again sent to the State Hospital, but, when he refused treatment, was transferred back to the State Penitentiary, where he was confined at the time he filed his Crim.P. 35(c) motion.

I

At the Crim.P. 35(c) motion hearing, the defendant argued that his guilty plea should be vacated because he had not been advised by the trial court of the *mens rea* element of the offense of rape. The statute under which the defendant had been charged contained no express culpable mental state requirement. However, in *People v. Naranjo*, 200 Colo. 1, 612 P.2d

1099 (1980), this court determined that the conviction of first degree sexual assault under section 18–3–402, 18 C.R.S. (1973),[4] required proof of knowing conduct. The Crim.P. 35(c) trial court determined that, pursuant to *Naranjo*, the rape statute under which the defendant had been charged also required proof of knowing conduct.

Although at the providency hearing neither the trial court nor defense counsel referred to the term "knowingly" when discussing the tendered guilty plea, the information read to the defendant by the trial court alleged that the defendant acted "unlawfully" and "feloniously." The Crim.P. 35(c) court concluded that the word "feloniously" appearing in the information was equivalent in meaning to the terms "knowingly" or "willfully" and that the reading of the information to the defendant adequately informed him of the *mens rea* element of the offense of rape. Relying on our decision in *People v. Muniz*, 667 P.2d 1377 (Colo.1983), the Court of Appeals reversed. We do not consider *Muniz* dispositive of the issue, and find that the record supports the Crim.P. 35(c) court's conclusion that the defendant's plea was entered knowingly.

Under the fourteenth amendment to the United States Constitution and article II, section 25, of the Colorado Constitution, a guilty plea must be made voluntarily and knowingly to be effective. *Henderson v. Morgan*, 426 U.S. 637, 99 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Harshfield v. People*, 697 P.2d 391 (Colo.1985); *Watkins v. People*, 655 P.2d 834 (Colo.1982). When a defendant subsequently challenges the efficacy of a guilty plea, the record of the providency hearing must show the defendant's understanding of the critical elements of the offense to which the plea is tendered. *Harshfield*,

4. Section 18–3–402, 8 C.R.S. (1978), sexual assault in the first degree, is the present equivalent to the former rape statute, C.R.S. 1963, § 40–3–401 (1971 Cum.Supp.). At the time the *Naranjo* case was commenced, § 18–3–402, like C.R.S. 1963, § 40–3–401, did not contain a *mens*

*rea* element. *Naranjo* held that a requisite mental element of "knowingly" may be implied from § 18–3–402. The mental element of "knowingly" has been added to § 18–3–402. *See* Ch. 224, sec. 16, § 18–3–402, 1977 Colo.Sess.Laws 959, 962.

697 P.2d 391; *Watkins,* 655 P.2d 834; *People v. Keenan,* 185 Colo. 317, 524 P.2d 604 (1974).

■ The provisions of Crim.P. 11 are designed to ensure compliance with these constitutional principles. *See People v. Leonard,* 673 P.2d 37 (Colo.1983). Compliance with Crim.P. 11 also creates a record to support a determination by both the trial court and a reviewing court of the defendant's understanding of the charge to which the plea is tendered. *Id.* At the time the defendant entered his plea, Crim.P. 11(c) [5] provided in pertinent part:

> The court shall not accept a plea of guilty or a plea of nolo contendere without ... determining:
> (1) That the defendant understands the charge against him.

The rule did not then require judicial definition of every element of the charged offense. Rather, it was sufficient for purposes of due process analysis that the record disclosed that the defendant knew and understood the general nature and critical elements of the offense. *See, e.g., People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974); *People v. Sanders,* 185 Colo. 356, 524 P.2d 299 (1974); *People v. Cumby,* 178 Colo. 31, 495 P.2d 223 (1972); *People v. Colosacco,* 177 Colo. 219, 493 P.2d 650 (1972).

■ In rejecting post-conviction challenges to the content of an information, we have concluded that the word "feloniously" in an information is equivalent to "knowingly" or "willfully." *See Gallegos v. People,* 161 Colo. 158, 420 P.2d 409 (1966) ("feloniously" when used in an indictment or information is equivalent to the word "willfully" and its use satisfies requirements of pleading essential elements of the crime); *Williams v. People,* 26 Colo. 272, 57 P. 701 (1899) ("feloniously" in an information has the same legal import as "willfully"); *cf. McConnell v. People,* 73 Colo. 99, 213 P. 674 (1923) (information stating that an act was committed "unlawfully and feloniously" sufficient to charge that the accused knowingly and willfully committed the offense). In relatively simple offenses, such as offenses which do not require a specific intent or do not include elements so technical in nature as to be beyond the understanding of persons of normal intelligence, the same factors used to determine the sufficiency of an information as a charging document may also be used to determine the adequacy of a guilty plea advisement.

■ An information is sufficient if it advises the defendant of the charges filed with sufficient particularity to permit the defendant to prepare an adequate defense and to protect the defendant from further prosecution for the same offense. *People v. Moore,* 200 Colo. 481, 615 P.2d 726 (1980); *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978). The information must describe the offense charged with such degree of certainty that a court may pronounce judgment upon conviction. *See* § 16–5–202(1)(d), 8 C.R.S. (1978); Crim.P. 7(b)(2); *Compton v. People,* 84 Colo. 106, 268 P. 577 (1928); *see also Moore,* 200 Colo.

---

**5.** In deciding this appeal, we, of course, must examine the entry of defendant's guilty plea in light of the requirements of Crim.P. 11 then in effect. *See People v. Leonard,* 673 P.2d 37 (Colo. 1983). The 1973 version of Crim.P. 11(c) provided in full as follows:

> The court shall not accept a plea of guilty or a plea of nolo contendere without first determining that the defendant is advised of all the rights set forth in (b) of this Rule and also determining:
> (1) That the defendant understands the charge against him;
> (2) That the plea is voluntary on defendant's part and is not the result of undue influence or coercion on the part of anyone;

> (3) That he understands the right to trial by jury;
> (4) That he understands the possible penalty or penalties and the possible places of incarceration;
> (5) And that the defendant understands that the court will not be bound by any representations made to the defendant by anyone concerning the penalty to be imposed or the granting or the denial of probation.

Crim.P. 11 was later modified to its present version, which became effective on April 1, 1974.

481, 615 P.2d 726. A properly advised guilty plea also allows a trial court to pronounce judgment, as a guilty plea "is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711–12. Thus, we have recognized that in some circumstances the reading of an information which is readily understandable to a person of ordinary intelligence without further explanation by the court may satisfy the requirements of Crim.P. 11. *People v. Gorniak*, 197 Colo. 289, 593 P.2d 349 (1979); *People v. Pauldino*, 187 Colo. 61, 528 P.2d 384 (1974); *Edwards*, 186 Colo. 129, 526 P.2d 144.

■ At the defendant's 1973 providency hearing, the information read to him alleged expressly that he "unlawfully and feloniously" committed the offense of rape. This language was readily understandable by a person of average intelligence, and the defendant affirmatively acknowledged that he understood the nature of the offense. Moreover, the attorney who had represented the defendant at the providency hearing testified at the Crim.P. 35(c) hearing that when the plea was entered the defendant understood the nature of the rape charge and understood the difference between consensual and nonconsensual intercourse. Under these circumstances, we conclude that the term "feloniously" appearing in the information sufficiently informed the defendant of the *mens rea* element of the offense of rape.

The Court of Appeals' reliance on *Muniz* is misplaced. In *Muniz*, we held that the entry of guilty pleas to the complex offense of conspiracy to commit burglary did not comply with Crim.P. 11 because the trial court neither explained nor discussed that charge with the defendants. The record in *Muniz* contained no evidence to support any determination that the defendants understood the nature of the crime to which they pled. In contrast, the record here discloses that the trial court read the information to the defendant and the defendant replied affirmatively when asked if he understood the charge; that the trial court inquired of the defendant whether his attorney had explained the situation to him and the defendant replied affirmatively; and that the defendant's attorney testified that his client understood the nature of the charge to which he entered his guilty plea. In these circumstances, the record supports the conclusion of the Crim.P. 35(c) court that the defendant was adequately advised of the nature and critical elements of the offense of rape, in compliance with Crim.P. 11, when he tendered his plea of guilty to that offense.

**II**

The defendant's Crim.P. 35(c) motion contained assertions of other errors at his providency hearing. Because it concluded that the trial court's advisement was insufficient, the Court of Appeals did not consider those arguments. We do, and reject them.

The defendant first contends that the trial court failed to determine whether the defendant understood the possible penalties and places of incarceration resulting from the acceptance of his guilty plea. Specifically, the defendant claims that he entered the plea with the understanding that one of two sentencing options was available: first, in the event of unfavorable psychiatric reports, incarceration in prison for a possible term of five to forty years; or second, in the event of favorable psychiatric reports, commitment to the State Hospital for a term of one day to life. The defendant argues that he was not informed that his guilty plea might result in what could in effect become a life sentence to the State Penitentiary.

At the time in question, Crim.P. 11(c)(4) required a judicial determination that a defendant tendering a plea of guilty to an offense "understands the possible penalty or penalties and the possible places of incarceration" which could result from an acceptance of the plea. At the providency hearing here, the defendant was informed by the trial court that the defendant could be sentenced under the rape statute to a prison term of from five to forty years or

under the Act to a commitment to the Department for a term of not less than one day to a maximum of the defendant's life. In response to questions by the trial court, the defendant stated that he understood the possible consequences resulting from the acceptance of his tendered plea.

■ We have on numerous occasions observed that no formal ritual is required to satisfy the requirements of Crim.P. 11. *See, e.g., Leonard,* 637 P.2d 37; *Edwards,* 186 Colo. 129, 526 P.2d 144; *Keenan,* 185 Colo. 317, 524 P.2d 604. At the time the defendant entered his plea, the Department had jurisdiction over fourteen separate state institutional facilities. *See* C.R.S. 1963, § 3–11–4 (1969 & 1971 Cum.Supp.).[6] Due to the specialized nature of the services administered and the functions performed by some of these facilities, the defendant was not subject to potential placement in all fourteen facilities. Crim.P. 11 did not require the trial court to provide the defendant with a litany of each facility under the Department's jurisdiction in which the defendant could initially be placed or to which he might later be transferred. The trial court correctly informed the defendant that one result of the acceptance of his guilty plea could be commitment to the Department for the rest of the defendant's life. No more detailed discussion of the possible locales in which the defendant might be placed was required.

■ At the Crim.P. 35(c) hearing, the attorney who represented the defendant at the providency hearing testified that prior to the tender of the plea he had advised the defendant that sentencing under the Act involved placement at the State Hospital only. That fact does not alter the effect of the correct explanation of the possible penalties provided by the trial court, however. *Cf. Miles v. Parratt,* 543 F.2d 638 (8th Cir.1976); *Wellnitz v. Page,* 420 F.2d 935

(10th Cir.1970); *State v. Williams,* 107 Ariz. 421, 489 P.2d 231 (1971).

The defendant also contends that his guilty plea should be vacated because the trial court failed to advise him expressly that he might be incarcerated in a penal institution even if he were sentenced under the Act. The Act provided in pertinent part as follows:

> Before the district court may accept a plea of guilty from any person charged with a sex offense, the court shall, in addition to any other requirement of law, advise the defendant that he may be committed to the custody of the department, including any penal institution under the jurisdiction of the department, as provided in section 39–13–203.

C.R.S.1963, § 39–13–204. In *People v. Adrian,* 701 P.2d 45 (Colo.1985), we recently rejected a similar challenge to the validity of a guilty plea tendered under the sentencing provisions of the present version of the Act. That case is dispositive of this issue.

The defendant next asserts that the trial court erred in failing to find a factual basis for the plea of guilty. We have stated frequently that absent unusual circumstances the record must reflect a factual basis for a plea of guilty to an offense. *See, e.g., People v. Canino,* 181 Colo. 207, 508 P.2d 1273 (1973); *People v. Alvarez,* 181 Colo. 213, 508 P.2d 1267 (1973); *People v. Randolph,* 175 Colo. 454, 488 P.2d 203 (1971). We also have recognized that such factual basis may be established by the record as a whole. *See, e.g., Harshfield,* 697 P.2d 391; *Canino,* 181 Colo. 207, 508 P.2d 1273; *see also* ABA Standards For Criminal Justice, *Pleas of Guilty,* Standard 14–1.6(b) Commentary at 35 (2d ed. 1980).

■ In the instant case, reports of two psychiatrists who examined the defendant were filed and made part of the record at the sentencing hearing. These reports contain descriptions provided by the defendant

---

**6.** These institutional facilities were the Colorado State Penitentiary, the Colorado State Reformatory, Colorado State Hospital, three State Home and Training Schools, Lookout Mountain School for Boys, Mount View Girls' School, Colorado Youth Center, Fort Logan Mental Health Center, Golden Gate Youth Camp, Lathrop Park Youth Camp, Colorado School for Deaf and Blind, and the Women's Correctional Institution.

of an armed abduction and sexual assault of a woman perpetrated by the defendant at a southeast Denver location. The accounts closely parallel the description of the rape incident contained in the affidavit accompanying the information filed against the defendant in the instant case, and are sufficient to establish a factual basis for the defendant's guilty plea.

██ The defendant finally argues that his sentence should be vacated because the trial court erroneously believed it was sentencing the defendant to treatment at the State Hospital and not to incarceration at the State Penitentiary. While addressing the defendant at the sentencing hearing, the trial court did state that "[t]he reports indicate that you should have some treatment and the penitentiary is not the place to get it." However, the judgment of conviction and sentence in this case expressly provided that the defendant was to be transferred to the institution specified by the executive director of the Department and that if the executive director should so direct, the defendant was to receive treatment at the State Hospital. We do not agree that the trial court's observation as to an appropriate setting for any prescribed treatment program is equivalent to a failure to understand the full effect of the Department's discretion to transfer any defendant to any institution under the Department's supervision and control. We conclude that the record does not support the defendant's assertion that the trial court imposed sentence under a mistake of law.

The judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed with regard to the issues raised by the defendant in this appeal.

LOHR, Justice, dissenting:

I agree with the majority's analysis in part I of the opinion. I respectfully dissent, however, to the majority's holding in Part II of its opinion that the advisement Wilson received concerning the possible places of incarceration satisfied the requirements of the Colorado Sex Offenders

Act of 1968 (the "Act") and of Crim.P. 11(c). At the time Wilson entered his plea, the Act provided in pertinent part:

> Before the district court may accept a plea of guilty from any person charged with a sex offense, the court shall, in addition to any other requirement of law, advise the defendant that he may be committed to the custody of the department, including any penal institution under the jurisdiction of the department, as provided in section 39-13-203.

Ch. 44, sec. 1, § 39-13-204, 1972 Colo.Sess. Laws 190, 256.

The relevant part of Crim.P. 11(c) provided:

> The court shall not accept a plea of guilty or a plea of nolo contendere without first determining that the defendant is advised of all the rights set forth in (b) of this Rule and also determining:
>
> . . . .
>
> (4) That he understands the possible penalty or penalties and the possible places of incarceration. . . .

The judge who accepted Wilson's plea did not advise Wilson that incarceration in a penal institution was a possible consequence of his guilty plea. To the contrary, the judge suggested the opposite when he decided later to sentence Wilson under the Act and stated, "The [psychiatrists'] reports indicate that you should have some treatment, and the penitentiary is not the place to get it. . . . So, this is really for your benefit." Furthermore, the judge had advised Wilson, before accepting the plea, that a sentence imposed under the rape statute would carry a prison term of five to forty years whereas a sentence imposed under the Act could lead to commitment "to the Director of Institutions" for a term of one day to life.

Although we decided in *People v. Adrian*, 701 P.2d 45, 48 (1985), that Crim.P. 11(c) and the present version of the Act do not require a formalistic advisement that exactly tracks the Act's words, the facts that rendered the advisement in *Adrian* satisfactory are not present in this case. In *Adrian*, the court told the defendant

that he could be placed in any institution under the jurisdiction of the Department of Corrections, and we noted that "since it is common knowledge that the Department of Corrections manages the state prison system, the defendant was advised in substance, although not in form, that he might be confined to a state prison under the [Act]." *Adrian*, 701 P.2d at 48. The same cannot be said in the present case. Wilson was advised that he could be committed to the "Director of Institutions." It is difficult to say that common knowledge included an understanding that the Director of Institutions managed both mental institutions and prisons.

Furthermore, the lawyer who represented the defendant in *Adrian* informed the court that he had told the defendant of possible consequences of sentencing under the Act on numerous occasions. 701 P.2d at 48. In contrast, Wilson's attorney testified that he advised Wilson that if he pleaded guilty under the Act and if his plea were accepted, he would be sent to the state hospital for treatment until released by officials there. Wilson's attorney testified that at the time he was advising Wilson, the attorney was either unaware of or paid no attention to the Act's provision allowing a sex offender to be incarcerated in the penitentiary or other penal institution.

Finally, whereas in *Adrian* we could conclude, based on the record, that the defendant did understand the possible consequences of his guilty plea, 701 P.2d at 48, the record in this case does not support such a conclusion. Wilson's attorney testified that Wilson showed interest in the plea agreement largely because he believed it meant he would not go to the penitentiary. The attorney was "sure" that Wilson thought the only place in which he would be incarcerated pursuant to the Act was the state hospital. Furthermore, one of the psychiatrists' reports, prepared before Wilson received his sentence, quoted Wilson as stating that he had "pled guilty to rape here in Denver to get to Pueblo and avoid being buried in Canon City."

Because this case is clearly distinguishable from *Adrian* in several essential aspects, I cannot agree with the majority's conclusion that *Adrian* is dispositive of Wilson's contention that he was not properly advised of the consequences of his guilty plea. Therefore, I would affirm the judgment of the court of appeals reversing the trial court's denial of Wilson's motion to vacate his guilty plea.

I am authorized to say that Justice NEIGHBORS joins in this dissent.