**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ANDREW MARK LAMAR,

     Petitioner - Appellant,

v.

JOHN O'DELL, Colorado Parole Board
Member,

     Respondent - Appellee.

No. 18-1270
(D.C. No. 1:16-CV-02808-MJW)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY[*]**
_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

Andrew Lamar, a Colorado prisoner proceeding pro se,[1] seeks to appeal the

district court's order denying his 28 U.S.C. § 2241 petition.[2] But first, he must obtain

a certificate of appealability (COA). *See Montez v. McKinna*, 208 F.3d 862, 867 (10th

Cir. 2000) (holding that state prisoner is required to "obtain a COA to appeal the

denial of a habeas petition . . . filed pursuant to . . . § 2241").

---

[*] This order isn't binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. But it may be cited for its persuasive value.
*See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[1] Because Lamar proceeds pro se, we liberally construe his filings. *See
Eldridge v. Berkebile*, 791 F.3d 1239, 1243 n.4 (10th Cir. 2015). But we won't act as
his advocate. *See id.*

[2] A magistrate judge heard the case upon the parties' consent. *See* Fed. R. Civ.
P. 73.

"To obtain a COA," Lamar "must make a substantial showing of the denial of a constitutional right"—i.e., he must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that)" the district court should have "resolved" his constitutional claims "in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). For the reasons discussed below, we conclude that Lamar fails to make this showing. Accordingly, we decline to issue a COA and dismiss this matter.

## Background

Lamar is currently serving a sentence of 12 years to life in prison for sexual assault. *See* Colorado Sex Offender Lifetime Supervision Act (SOLSA) of 1998, Colo. Rev. Stat. Ann. §§ 18-1.3-1001 to -1012. In 2016, he filed the underlying § 2241 petition in federal district court. In that petition, Lamar asserted that (1) denying him parole and continuing to confine him after he has already served his minimum 12-year sentence violates the Fourteenth Amendment; (2) he has a liberty interest that prohibits the Colorado State Board of Parole (the Board) from determining whether he has been rehabilitated or whether he continues to pose a threat to the public; and (3) § 2241 is the appropriate vehicle in which to advance these arguments.

The district court agreed that Lamar could bring his claims under § 2241. But it nevertheless denied him relief. In doing so, the district court first pointed out that this court has repeatedly indicated SOLSA doesn't "create a liberty interest in parole of sex offenders" and therefore "due process is not implicated in the denial of parole

2

under SOLSA." *Diaz v. Lampela*, 601 F. App'x 670, 677 (10th Cir. 2015) (unpublished); *see also Conkleton v. Raemisch*, 603 F. App'x 713, 716 (10th Cir. 2015) (unpublished) ("Because Colorado's parole scheme for sex offenders is discretionary . . . [p]laintiff does not have a constitutionally protected liberty interest in being granted parole or in receiving a favorable parole certification or recommendation."); *Jago v. Ortiz*, 245 F. App'x 794, 797 (10th Cir. 2007) (unpublished) ("Because [SOLSA] gives the [B]oard total discretion in granting parole . . . [petitioner] has no federally protected liberty interest.").

Next, the district court noted that at Lamar's 2016 parole hearing, the Board "deferred its parole decision to November 2019" at Lamar's own behest. R. 68. The district court also pointed out that the Board determined Lamar continued to present a risk to the public. Under these circumstances, the district court reasoned, the Board's "deferment" of its decision until November 2019 wasn't "arbitrary, capricious, or an abuse of discretion." *Id.* at 69. Finally, the district court rejected Lamar's suggestion that *Humphrey v. Cady*, 405 U.S. 504 (1972), or *Specht v. Patterson*, 386 U.S. 605 (1967), might establish otherwise. Accordingly, the district court denied Lamar's petition.

**Analysis**

**I.     Due Process**

In attempting to show that reasonable jurists would find the district court's resolution of his due-process claim debatable or wrong, Lamar first renews his assertion that he has "a due[-]process liberty interest" in parole "once the lower[]end

3

[of his] sentence has expired." Aplt. Br. 3. Specifically, Lamar argues that once he completed the first 12 years of his sentence, denying him parole and continuing to confine him amounts to imposing a new sentence. Thus, he insists, the district court erred in concluding that by declining to grant him parole, the Board merely "continue[d] the punishment previously imposed by the court that sentenced him for the underlying offense." R. 69 (quoting *Diaz*, 601 F. App'x at 676).

In support, Lamar first cites *People v. Kibel*, 701 P.2d 37 (Colo. 1985). In *Kibel*, the Colorado Supreme Court indeed noted, "Several courts . . . have held that, following the expiration of a period equal to the *maximum* permissible sentence for the underlying crimes, sex offenders must be afforded the same procedural protections as civil committees or other groups whose commitment serves the state interest in public protection." 701 P.2d at 42 n.8 (emphasis added). But the Colorado Supreme Court then went on to explain that "[s]ex offenders are confined for an indeterminate period." *Id.* Here, for instance, Lamar is serving a sentence of 12 years to life in prison. And although Lamar points out that he has already served his *minimum* 12-year sentence, the district court correctly noted that Lamar neither identifies "what he believes [to be] the . . . *maximum* permissible sentence for his underlying crimes" nor alleges that "he has served that time." R. 70 (emphasis added). Thus, we reject Lamar's assertion that *Kibel* "supports [his] claim." Aplt. Br. 3.

Next, Lamar cites *Block v. Potter*, 631 F.2d 233 (3d Cir. 1980). There, the Third Circuit held that "[e]ven if a state statute does not give rise to a liberty interest

4

in parole release," prisoners nevertheless "have a liberty interest flowing directly from the due[-]process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block*, 631 F.2d at 236. Yet *Block*'s approach has since "been rejected by other circuits" and even "called into doubt by the Third Circuit itself." *Wildermuth v. Furlong*, 147 F.3d 1234, 1239 n.7 (10th Cir. 1998) (Anderson, J., dissenting). And in any event, the district court in this case reviewed the Board's 2016 "deferment" decision and determined that it wasn't "arbitrary, capricious, or an abuse of discretion." R. 69. Lamar doesn't challenge that aspect of the district court's ruling on appeal. *See* Fed. R. App. P 28(a)(8)(A); *Jordan v. Bowen*, 808 F.2d 733, 736 (10th Cir. 1987). Nor could he credibly do so, as it appears the Board deferred its decision upon Lamar's express request. Thus, Lamar isn't entitled to a COA on this basis. *See Slack*, 529 U.S. at 484.

## II.     Equal Protection

Lamar next alleges the district court erred in concluding that he failed to adequately "raise an equal[-]protection claim based on" the Supreme Court's decision in *Humphrey*, 405 U.S. 504. R. 70. Construed liberally, Lamar insists, his petition was sufficient to place this issue before the district court.

Yet even if we agree with Lamar that his equal-protection claim is "properly" before us, his opening brief suffers the same deficiency as did his petition. Aplt. Br. 4. Namely, *Humphrey* involved a state statutory scheme that, for purposes of making involuntary-commitment decisions, treated sex offenders differently from certain other individuals. *See Humphrey*, 405 U.S. at 508 (noting contrast between

5

Wisconsin's Mental Health Act, which provided individuals with "a statutory right to have a jury determine whether" they satisfied "the standards for commitment," with Wisconsin's Sex Crimes Act, which afforded no such right). And as the district court pointed out below, Lamar failed to identify in his petition any "differing laws enforced in Colorado akin to those evaluated in *Humphrey*." R. 70.

Lamar likewise fails to identify any such "differing laws" on appeal. *Id.* Thus, he fails to make the "threshold showing" necessary to state a viable equal-protection claim—i.e., "that [he was] treated differently from others who were similarly situated." *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). Accordingly, Lamar isn't entitled to a COA on this basis. *See Slack*, 529 U.S. at 484.

## Conclusion

Lamar doesn't demonstrate that reasonable jurists could debate the district court's resolution of his constitutional claims. We therefore decline to issue a COA and dismiss this appeal. As a final matter, we deny Lamar's motion to proceed in forma pauperis. *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("[I]n order to succeed on a motion to proceed [in forma pauperis], the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues

6

raised in the action.").

Entered for the Court


Nancy L. Moritz
Circuit Judge